SALINA STOCK CO. et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. February 21, 1898.)

No. 961.

1. PUBLIC LANDS—DESERT LAND ACT—CORPORATIONS.

The desert land act of March 3, 1877, which authorizes "any citizen of the United States, or any person of requisite age," etc., to make an entry of desert lands, does not include corporations.

2. SAME—ACQUISITION FOR CORPORATION.

An entry of desert land under the act of March 3, 1877, was made at the expense of an association (subsequently incorporated), in the name of persons living at a great distance from it, who paid none of the purchase money. After the ditches were dug these persons were taken, solely at the corporation's expense, to view the land, for the purpose of enabling them to make final proofs. After the title was perfected, they conveyed it to the corporation. *Held*, that the entry was fraudulent, and the patent should be canceled.

Appeal from the Circuit Court of the United States for the District of Utah.

Robert Harkness (C. W. Bennett, A. Howat, and W. M. Bradley, on the brief), for appellants.

John W. Judd, U. S. Dist. Atty.

Before SANBORN and THAYER, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge. This is a suit to vacate two patents to lands, granted, respectively, to the defendants Edward A. Franks and Nellie Franks. The lands in question were entered by them under what is known as the "Desert Land Act." 19 Stat. 377. The controversy grows out of a state of facts germane in their general features to those in cases numbered 960 and 962, entitled U. S. v. Mackintosh and U. S. v. Chambers (decided at this term). 85 Fed. 333. The circuit court rendered a decree as prayed for in the bill, to reverse which the defendant the Salina Stock Company prosecutes this appeal.

The material differences between this and the cases supra will be noted in this opinion. The defendants Edward A. Franks and Nellie Franks, at the time of filing their application on the 7th day of July, 1886, and up to the time of the issue of the patents to them, were husband and wife. The bill of complaint was lodged against the said Franks and the Salina Stock Company. It sets out the facts leading up to the issue of the patents practically as set forth in the Mackintosh and Chambers Cases; but it alleges that what is commonly known as the "filing fee," of 25 cents per acre, and the remaining purchase money on final proofs, were paid by the Franks or said company. The bill then charges:

"That each of the said defendants [referring to said Franks], in their written affidavits heretofore described, both testified that they had the sole and entire interest in their said entries, and in the tracts of land covered thereby, and in the right to the water sufficient to continuously irrigate the same."

It is then alleged that, after the patents were obtained, the said Franks made quitclaim deeds to the said company to the lands for a nominal consideration, and that for years prior thereto, from the in-

ception of the entry, the said company had possession, control, use, and occupation of the land without ever paying anything for such use. This is followed with the allegation:

"That said defendants, Nellie and Edward A. Franks and the Salina Stock Company, confederated and conspired together to cheat and defraud your orator, by procuring said patents through fraud and deceit, and that they did procure the same by fraud and deceit, in that the final proof made by affidavits as aforesaid was untrue and false, in this: that said Franks did not own and control and have a clear right to the use of water sufficient to irrigate the whole of the land described in their entries, and for keeping the same permanently irrigated."

And further negatived the essential statements of fact contained in said final proofs, concluding with the following averment:

"And that the said defendants [Nellie and Edward A. Franks] did not own the sole and entire interest in said entry and tract of land covered thereby; but that, on the contrary, the said entry was made in the interest of and for the benefit of said defendant the Salina Stock Company."

The bill finally charges that the statements made in the affidavits of final proof—

"Were false and known by said parties to be false at the time of making the same; and that they were made and procured by said defendants Nellie and Edward A. Franks with the knowledge of and in collusion with the other defendant, the Salina Stock Company, for the fraudulent and wicked purpose, and with the intent, of imposing upon the register and receiver of the said land office, and of the officers of your orator, * * * by causing them to believe that the statements and averments in said affidavits were true; * * * and said officers, not knowing the true facts in the case, but relying upon the statements and averments in said affidavits, and believing them to be true, caused patents to be issued to the said defendants Nellie and Edward A. Franks."

The statute under which the entries in question were made declares:

"That it shall be lawful for any citizen of the United States, or any person of requisite age who may be entitled to become a citizen and who has filed his declaration to become such, and upon payment of twenty-five cents per acre, to file a declaration under oath with the register and the receiver of the land district in which any desert land is situated, that he intends to reclaim a tract of desert land not exceeding one section, by conducting water upon the same within a period of three years thereafter."

This language clearly enough excludes an association, like a corporation, from making such entry, as by its terms it is limited to citizens of the United States, or a person of requisite age who may be entitled to become a citizen of the United States. This construction finds confirmation in the further provision that "no person shall be permitted to enter more than one tract," etc. Therefore the regulation of the interior department that the person making the entry shall state that he is the owner of the entire interest is in consonance with the spirit of the statute, to prevent anyone not entitled to its benefit from imposing upon the government.

The substantive effect of the averments of the bill is that the Franks swore falsely that they were the sole parties in interest in their said entries, and in the right to the water supply; that they confederated and conspired at the very inception of the proceedings with the Salina Stock Company to cheat and defraud the government; and that the affiants did not own and control the required water supply, and did not own and control the entire interest in said entries, but, on the contrary, the said entries were made in the interest and for the benefit

of said company.   The evidence discloses substantially the following state of facts:   The Franks resided in the city of Salt Lake, Utah, more than 100 miles from this land.   They were people of very limited means.   One Samuel H. Gilson, who was connected with this stock company, and perhaps its vice president, was, prior to the application filed by the Franks, associated with Edward A. Franks as a partner in Salt Lake City in the detective business.   He suggested to Edward A. Franks the idea of locating this land.   He was a frequent visitor at the home of said Franks, and induced Mrs. Franks to enter into this scheme.   Neither of the Franks had ever seen the lands at the time of their application, and from that day to the making of the final proofs they were never on the land.   When the time arrived for making the final proofs they were taken to the lands by one Ferons, who was the surveyor for the Salina Stock Company.   On arrival at the lands they met Mr. Ireland, who was one of the promoters of the defendant company, its manager, and later its treasurer.   They were hauled about over the land, and shown some irrigating ditches, into which some water was turned for exhibition, to enable the Franks, without much strain of conscience, to swear that they had seen water running in the ditches.   The land was then fenced and in the control of Ireland, and the ditches, whatever were there, had been made without the knowledge of the Franks, and without any expense to them.   The evidence does not show that they had ever obtained any water rights, by grant or otherwise.   They were on the land but a few hours.   They were then taken back to Salt Lake City, where they made the required affidavits for final entry, swearing to everything according to the form of the depositions requisite to perfect the entry. When they left the lands said Ireland gave Edward Franks a letter to one Chambers, directing Chambers to pay Franks.   The sum so received by Franks amounted to about $215, which covered his and Mrs. Franks' expenses in going to and from the land, and presumably to compensate them for the use of their names and their trouble. Taking the whole testimony together, there can be no doubt that the Franks never paid one dollar of the money on the entry of this land. Afterwards they made to the company quitclaim deeds to the lands, with a nominal consideration expressed therein.

It is said, however, that these conclusions rest largely upon the deposition of Edward A. Franks, who, in view of his affidavit given in making the final proofs. stultified himself.   It is a sufficient answer to this to say that the defendant company through none of its officers offered one syllable of testimony in contradiction or explanation.   It is also asked, where is the evidence that Mrs. Franks was particeps criminis in this alleged fraudulent transaction?   It is found principally in the testimony of Edward A. Franks.   It consists, in his statement that said Gilson, the friend of the family, got Mrs. Franks to make the application; that she never saw the land until she was taken to it in 1889, just as he was, by the representative of the company; that he never knew of her paying out any money or receiving any money on account of this land.   In the language of Judge Story (The Henry Ewbank, 1 Sumn. 408, Fed. Cas. No. 6,376):   "One cannot wink so hard as not to see."   Blind and deaf, indeed, would be

the chancellor who was not led to the door of truth by such palpable facts and persuasive circumstances.

It is further suggested, in behalf of the company, that the bill alleges a conspiracy between the Salina Stock Company, when in fact the company was not organized until 1888 as a corporation, after the initiative application to enter the land. But there is evidence in the record that shows that this company in effect existed as a voluntary association prior to the application. It was composed of the same interested parties who constituted the stockholders and directors of the incorporated concern. As the same association of parties that inaugurated the scheme carried it into the corporation and received the full benefit, and the corporation adopted it and reaped the fruits of the fraud, it was admissible to plead the facts according to their legal effect, and to prove them, as was done in this case. The decree of the circuit court is affirmed.