· UNITED STATES v. WELLS.

(Circuit Court of Appeals, Second Circuit. January 11, 1912.)

Nos. 53-56.

1. CONSPIRACY (§ 33*)—COAL LANDS—FRAUDULENT ENTRY—CONSPIRACY.

Rev. St. § 2347 (U. S. Comp. St. 1901, p. 1440), provides that every citizen may enter vacant coal lands of the United States not exceeding 160 acres to any individual person, or 320 acres to an association, and section 2350 (page 1441) declares that the preceding section shall authorize only one entry by the same person or association of members, and no association of persons, any member of which shall have taken the benefit of such sections, either as an individual or as a member of any other association, shall enter on or hold any other lands under the provisions thereof, and no member of any association which shall have taken the benefit of such sections shall enter or hold any other lands under such provision. *Held* that, while such act does not prevent individuals from making entries with the intent to convey the same to a corporation or another, it does prohibit individuals or corporations from acquiring more coal land than they are entitled to enter directly by employing dummies to make entries for their benefit; and hence where defendants associated themselves and conspired to employ dummies to enter coal lands of the United States for a corporation to be thereafter formed, and committed overt acts in furtherance of such conspiracy, such acts amounted to a conspiracy to defraud the United States.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 60; Dec. Dig. § 33.*]

2. CONSPIRACY (§ 33*)—FRAUD—CO-CONSPIRATORS.

Where defendants in New York conspired to obtain coal lands belonging to the United States to an amount much larger than that prescribed by Rev. St., § 2347 (U. S. Comp. St. 1901, p. 1440), and for this purpose employed dummy entrymen to make entries on the land in Wyoming, it was not essential to a conviction of defendants of conspiracy to defraud the United States that it should be also shown that the entrymen were co-conspirators.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 60; Dec. Dig. § 33.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am: Digs. 1907 to date, & Rep'r Indexes

3. CRIMINAL LAW (§ 113*)—VENUE—PLACE OF OFFENSE.

Where defendants conspired to defraud the United States by means of excessive coal entries made through dummy entrymen in Wyoming, it was not essential to the forming of the conspiracy in that state that any of the defendants should have been physically present there prior to the time the entry applications were verified in New York, and forwarded to Wyoming for filing, but it appearing that one of the defendants, a resident of Wyoming, had been appointed attorney in fact for some of the entrymen, and had been in touch with some of the other members of the association for some months prior to the verifying of the applications, the facts warranted an inference that the offense was committed in Wyoming, and that the defendants were therefore subject to indictment in that state.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 232; Dec. Dig. § 113.*]

Appeal from the Circuit Court of the United States for the Southern District of New York.

Frank T. Wells, Rufus J. Ireland, Wilberforce Sully, and George W. Dally were indicted for conspiracy to defraud the United States in obtaining a quantity of coal land in Wyoming, and from an order discharging defendants on habeas corpus the United States appeals. Reversed and remanded.

Henry A. Wise, U. S. Atty., and Abel I. Smith, Jr., Asst. U. S. Atty. (Stuart McNamara, of counsel), for the United States.

Hawkins, Delafield & Longfellow (Charles F. Brown, and Lewis L. Delafield, of counsel), for appellees.

Before COXE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. This is an appeal from an order of the Circuit Court upon writ of habeas corpus discharging the defendants who were held awaiting an order for removal under section 1018, U. S. Rev. Stat. (U. S. Comp. St. 1901, p. 719), to Wyoming for trial under an indictment charging them with conspiring to defraud the United States in violation of section 5440, U. S. Rev. Stat. (U. S. Comp. St. 1901, p. 3676). The indictment charges that June 1, 1906, within the district of Wyoming, the four defendants, residents of New York, conspired with four other defendants, residents of Wyoming, and with other persons, to defraud the United States by obtaining 1,760 acres of coal land of the United States in Wyoming for a corporation to be thereafter formed under the name of the Owl Creek Coal Company in excess of the acreage which such corporation could obtain by direct entry, and to accomplish this by hiring individual entrymen to make entries, not for their own use and benefit, but for the use and benefit of the corporation, and by advancing the moneys necessary for making the entries and paying for the land to be subsequently conveyed to the corporation.

The indictment then goes on to charge as overt acts in pursuance of the conspiracy the verification of entry appplications by some 14 entrymen June 4, 1906, at Amityville, N. Y., the verification of nonmineral affidavits to accompany said applications by defendants in Wyoming: the filing by the conspirators of the applications of the entry-

men June 22, 1906, in the United States Land Office at Lander, Wyo.; the payment there by the conspirators of the purchase price of the land; the payment to the entrymen of $10 each for making the entries and the forwarding of their deeds to the Owl Creek Coal Company from Amityville to the register of deeds of Big Horn county, Wyo., for record.

[1] The right to enter coal lands is regulated by sections 2347–2352, U. S. Rev. Stat. (U. S. Comp. St. 1901, pp. 1440, 1441), the following sections only being material here:

"Sec. 2347. Every person above the age of twenty-one years, who is a citizen of the United States, or who has declared his intention to become such, or any association of persons severally qualified as above, shall upon application to the register of the proper land office, have the right to enter, by legal subdivisions, any quantity of vacant coal lands of the United States not otherwise appropriated or reserved by competent authority, not exceeding one hundred and sixty acres to such individual person, or three hundred and twenty acres to such association, upon payment to the receiver of not less than ten dollars per acre for such lands, where the same shall be situated more than fifteen miles from any completed railroad, and not less than twenty dollars per acre for such lands as shall be within fifteen miles of such road."

"Sec. 2350. The three preceding sections shall be held to authorize only one entry by the same person or association of members; and no association of persons any member of which shall have taken the benefit of such sections, either as an individual or as a member of any other association, shall enter or hold any other lands under the provisions thereof; and no member of any association which shall have taken the benefit of such sections shall enter or hold any other lands under their provisions. * * *"

It is said that the indictment charges no offense because there is nothing to prevent individuals from making entries with the intention of conveying to a corporation or to any one else. This is quite true of persons really making independent entries, but the whole act could be nullified if individuals or corporations could acquire more land than they were entitled to enter directly by employing dummies to make entries for their benefit. U. S. v. Munday, 222 U. S. 175, 32 Sup. Ct. 53, 56 L. Ed. ——. The difference between entries which are independent and entries which are for the use of others is pointed out by the Circuit Court of Appeals for the Eighth Circuit in two civil actions under the desert land act—United States v. Mackintosh, 85 Fed. 333, 29 C. C. A. 176, where the reclaimants were acting in their own right, and Salina Stock Co. v. United States, 85 Fed. 339, 29 C. C. A. 181, where the reclaimants were acting for the benefit of a corporation. The distinction is also pointed out by Sanborn, J., in two cases under the coal land act—Pereles v. Weil (D. C.) 157 Fed. 419, where the entrymen were acting on their own behalf, and Arnold v. Weil (D. C.) 157 Fed. 429, where they were acting on behalf of others. It is also recognized in the two cases the defendants rely upon—United States v. Keitel, 211 U. S. 370, 29 Sup. Ct. 123, 53 L. Ed. 230, a case under the coal land act, and United States v. Budd, 144 U. S. 154, 12 Sup. Ct. 575, 36 L. Ed. 384, a case under the timber and stone act. In the former Mr. Justice White, at page 387 of 211 U. S., page 127 of 29 Sup. Ct. (53 L. Ed. 230), said:

"Beyond question by section 2347, U. S. Rev. Stat., every one possessing the qualifications of age and citizenship therein stipulated is entitled, upon

application, and on payment of the price fixed by law to purchase in his own behalf one hundred and sixty acres of coal land. * * * "

And in the latter case Mr. Justice Brewer at page 163 of 144 U. S., page 577 of 12 Sup. Ct. (36 L. Ed. 384), said:

"The act does not in any respect limit the dominion which the purchaser has over the land after his purchase from the government, or restrict in the slightest his power of alienation. All that it denounces is a prior agreement, *the acting for another in the purchase.* If when the title passes from the government *no one save the purchaser* has any claim upon it, or any contract or agreement for it the act is satisfied."

The charge in the indictment is most clear that the entrymen were not acting for their own use and benefit.

It is next said that, even if they were not acting for themselves, they could not be acting for a corporation to be thereafter created, and not in existence at the time the entries were made. But the offense charged is a conspiracy to defraud the United States in pursuance of which the defendants committed overt acts. It makes no difference whether the corporation to be benefited was in existence, or whether it ever came into existence or the conspiracy was ever carried out. We have so held in Radin v. United States, 189 Fed. 568, in which the indictment charged a conspiracy under section 5440 to commit an offense against the United States, namely, that a bankrupt should conceal property of the bankrupt estate from his trustee. The conviction was sustained, although no trustee was ever appointed.

[2] The second objection and the one upon which the court below decided the case is that, if there were a conspiracy, it must have been made in New York because none of the defendants had been in Wyoming or had communicated with any one in Wyoming until after June 4, 1906, when the crime, if any, was consummated by the first overt act of verifying the entry applications at Amityville in this state. The defendants took a large volume of testimony before the commissioner to overcome the prima facie case in favor of the United States which the indictment offered in evidence made out. Their witnesses did testify as the court below held. But there was circumstantial evidence of concerted action and common purpose from which a conspiracy might be inferred. It is not essential that the entrymen should be co-conspirators. They may have allowed themselves to be used out of mere good nature or for compensation without any appreciation whatever of the conspiracy, if one existed. Moreover, they made affidavits taken and written down by a government inspector which indicated participation on their part. It is true that they testified they did not make the statements to that effect contained in the affidavits. But it is no part of our duty to weigh the evidence. Hyde v. Shine, 199 U. S. 62, 84, 25 Sup. Ct. 760, 50 L. Ed. 90.

[3] Moreover, the defendant Gebo, a resident of Wyoming, who was appointed attorney in fact for some of the entrymen, had been in touch with some of the other parties as early as December, 1905, upon the subject of these coal lands. The conspiracy could have been made in Wyoming, where its purpose was to be accomplished without any of the defendants being physically there or being personally acquainted with each other before June 4, 1906, when the entry applications were

verified at Amityville. Price v. Henkel, 216 U. S. 488, 30 Sup. Ct. 257, 54 L. Ed. 581. If the conspiracy was made in Wyoming, they are indictable there, although the first overt act was committed at Amityville, and they might also have been indicted in New York. It is a hardship to require the defendants to go to Wyoming for trial, and it may well be that they are not guilty of the offense charged in the indictment. But with these considerations we have nothing to do. We have only to determine whether the indictment does charge an offense, and whether there was any evidence to sustain the finding of the commissioner that there was probable cause to believe that the defendants had committed it in Wyoming.

As we feel obliged to find that both these conditions existed, the order of the court below is reversed, and the defendants remanded to the custody of the marshal.