## UNITED STATES v. MACKINTOSH et al.

### SAME v. CHAMBERS et al.

(Circuit Court of Appeals, Eighth Circuit. February 21, 1898.)

#### Nos. 960 and 962.

**1.** PUBLIC LANDS—DESERT LAND ACT—REGISTER'S DECISION.

A decision by the register of the local land office that a particular tract is desert land, so as to be subject to purchase under the desert land act of March 3, 1877, is not reviewable by the courts, in the absence of fraud.

**2.** SAME—EXTENT OF RECLAMATION.

It is a sufficient reclamation to entitle the purchaser to a patent that he has acquired a right to sufficient water to irrigate the land, and has constructed main ditches sufficient to carry it over the accessible parts of the tract, for purposes of cultivation in the ordinary manner, though he has not actually used and cultivated the land.

**3.** SAME—TRANSFER OF TITLE.

The mere fact that an individual, reclaiming and purchasing such desert lands with his own money, intends from the beginning to transfer them to a corporation when the title is perfected, does not render his acquisition unlawful, when there was no prior conspiracy whereby he became the mere agent of the corporation for the purpose of procuring title for it.

Appeal from the Circuit Court of the United States for the District of Utah.

By consent of the parties the above cases were consolidated for trial, and the depositions taken therein, so far as applicable, were used in both cases. The suits are brought to vacate patents obtained by Emma F. Mackintosh and Eudora T. Chambers, each to 640 acres of land in Sevier county, Utah, entered under what is known as the "Desert Land Act," approved March 3, 1877 (19 Stat. p. 377). Sections 1 and 2 of this act are as follows:

"Section 1. It shall be lawful for any citizen of the United States, or any person of requisite age 'who shall be entitled to become a citizen, and who has filed his declaration to become such' and upon payment of twenty-five cents per acre—to file a declaration under oath with the register and the receiver of the land district in which any desert land is situated, that he intends to reclaim a tract of desert land not exceeding one section, by conducting water upon the same, within the period of three years thereafter, provided however that the right to the use of water by the person so conducting the same, on or to any tract of desert land of six hundred and forty acres shall depend upon bona fide prior appropriation: and such right shall not exceed the amount of water actually appropriated, and necessarily used for the purpose of irrigation and reclamation; and all surplus water over and above such actual appropriation and use, together

with the water of all lakes, rivers and other sources of water supply upon the public lands and not navigable, shall remain and be held free for the appropriation and use of the public for irrigation, mining and manufacturing purposes subject to existing rights. Said declaration shall describe particularly said section of land if surveyed, and, if unsurveyed, shall describe the same as nearly as possible without a survey. At any time within the period of three years after filing said declaration, upon making satisfactory proof to the register and receiver of the reclamation of said tract of land in the manner aforesaid, and upon the payment to the receiver of the additional sum of one dollar per acre for a tract of land not exceeding six hundred and forty acres to any one person, a patent for the same shall be issued to him. Provided, that no person shall be permitted to enter more than one tract of land and not to exceed six hundred and forty acres which shall be in compact form.

"Sec. 2. All lands exclusive of timber lands and mineral lands which will not, without irrigation, produce some agricultural crop, shall be deemed desert lands, within the meaning of this act, which fact shall be ascertained by proof of two or more credible witnesses under oath, whose affidavits shall be filed in the land office in which said tract of land may be situated."

The original filing of the application for this land was July 7, 1886, each for 640 acres, lying contiguous to each other. The final proof for patent was made on September 7, 1889. The patent to Emma F. Mackintosh issued February 7, 1893. She has since died, and this suit is against appellees Mackintosh and Goss as her heirs. The patent to Eudora T. Chambers was issued on the same date.

The original bill of complaint was lodged alone against the said heirs of Emma F. Mackintosh and against Eudora T. Chambers. The bill, which is substantially the same in both cases, after setting forth the facts, charges that, in the final proof made on the 7th of September, 1889, the claimant testified that she owned and had a right to the use of water sufficient to irrigate the whole of said land, and for keeping the same permanently irrigated, and that water had been conducted during one season upon the land so as to cover the whole thereof, excepting about 10 acres; that the same had been irrigated and practically reclaimed from its desert condition,—with a further statement that there were ditches thereon for conducting the water of a given width and depth, and that she had seen the water distributed through said ditches on September 5, 1889. The bill further charges that the claimant procured said Eudora T. Chambers and one William Montgomery to support her claim with affidavits containing substantially the facts alleged to have been given in her affidavit. The bill avers that the applicant not only paid the original filing fee of 25 cents per acre, but that she paid at the time of final entry the further sum of $640, which was the balance of the required purchase price of the land. The bill further alleges that thereupon the register of the land office certified that the claimant had complied with the law and was entitled to a patent to the land. The bill charges "that said patent so issued was procured by her through fraud, covin, and deceit, in that said land was not desert land, nor was it subject to entry and purchase as such." In the succeeding paragraph of the bill fraud, covin, and deceit in the final proof is reasseverated to have been "by the affidavits aforesaid," and that the final proof "was untrue and false, in that the said Emma F. Mackintosh did not own and control, and did not have, a clear water right to the use of water sufficient to irrigate the whole of said land, and for keeping the same permanently irrigated, and that water had not been conducted during one season upon the land so as to cover the whole thereof, except about 10 acres." It also negatived the existence of the ditches, which was then and there well known to said Mackintosh and to said witnesses at the time of making said affidavits. The bill then, in general terms, charges that these affidavits were made and given for the fraudulent purpose of imposing upon the register and receiver of the land office and "the officers of your orator, by causing them to believe that the statements and averments were true, and that said land was desert land, and that said Emma F. Mackintosh had in fact reclaimed the same, and that the said register and receiver, relying upon the statements, caused a patent to be issued." The fact was that, some time after the issue of the patents in question, the said appellees had, for a valuable consideration, conveyed the land in question to the Salina Stock Company. These conveyances were made at different dates in 1892.

On May 21, 1896, the complainant filed an amendment to its bill, setting up the fact that since the filing of the original bill the knowledge of said conveyances to the Salina Stock Company had come to complainant, and it prayed that said company be made a party defendant thereto, which was accordingly done. The averments made in the original bill were left intact, and the allegations in the amended bill, inculpatory of the Salina Stock Company, are as follows: "That the said deed was for the nominal consideration of $1,000, but that the complainant is uninformed as to whether the $1,000 was in fact paid by said company;" but upon information and belief it alleged "that the said Salina Stock Company took the deed as purchaser with full notice of the fraudulent means whereby said patent was procured," and therefore the Salina Stock Company was not a purchaser for value, "but that the said entry was made, and said patent procured from your orator, for the benefit of said Salina Stock Company, who was the real party in interest."

Issue was taken upon most of the material allegations of the bill, excepting the fact of the original filing and final entry, the issue of patent, and subsequent sale to the Salina Stock Company. A large amount of testimony was taken, and on final hearing the circuit court found the issues for the defendants, and dismissed the bills. To reverse those decrees the United States prosecutes these appeals.

John W. Judd, U. S. Dist. Atty.

Robert Harkness (C. W. Bennett, A. Howat, and W. M. Bradley, on the brief), for appellees.

Before SANBORN and THAYER, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge, after stating the case as above, delivered the opinion of the court.

It will better enable us to understand the gravamen of this bill by giving a succinct analysis of the desert land act. (1) It is made lawful for any citizen, etc., upon the payment of 25 cents per acre, to file a declaration under oath with the designated officer. The statute defines what this oath shall state, to wit, that the affiant "intends to reclaim a tract of desert land not exceeding one section, by conducting water upon the same within a period of three years thereafter." From this it is to be observed that the applicant does nothing more in the initiative step than to pay the required fee of so much per acre, accompanied with the oath of an intention to reclaim the tract of desert land by means of conducting water thereon within the given period. Whether or not the land proposed thus to be reclaimed is desert land is a matter of preliminary proof, to the satisfaction of the register of the land office, which will be hereafter discussed. (2) In view of the fact that water rights within the territory of Utah were of the greater value, which the law in such territories has ever been most zealous to protect, having regard to priorities and to the equitable distribution of the water supply among the people, the statute follows the first clause with the proviso that the right to use the water to be conducted upon the land proposed to be reclaimed shall depend upon the prior appropriation in good faith, and the right is limited not to exceed the amount of water actually appropriated and necessarily used for irrigation and reclamation, and all other water, including surplus, from which the required supply is drawn, shall inure to the benefit of the public. (3) If the land has been surveyed, the declaration shall describe particularly the section, and, if unsurveyed, shall describe it as near as practicable. (4) At any

time within three years after the filing of such declaration, upon making satisfactory proof to the designated officers of the reclamation of the tract of land in the manner aforesaid, and upon payment to the receiver of the further sum of $1 per acre, a patent for the land, not exceeding 640 acres in compact form, shall be issued to the claimant.

The occasion on which the desert character of the land is to be ascertained is at the time of filing the declaration. This is a fact to be ascertained to the satisfaction of the register of the land office, by affidavits or other appropriate evidence. The declaration of the applicant in this case, as appears from the evidence in the record, was in conformity with the first clause of the statute above noted. It would seem that the land-office department had prescribed that the declaration should contain more than the statute requires, as the declaration further stated that the land, without irrigation, would not produce an agricultural crop. But her distinct statement is that she "became acquainted with said land by reliable information," and, further, that her reclamation was not made for the purpose of fraudulently obtaining title to mineral, timber, or agricultural land, but for the purpose of faithfully reclaiming the same within three years by conducting water thereon. This application was further supported by the affidavits of two witnesses, certifying to the desert character of the land, based upon their personal knowledge of its situation and quality. It was upon this evidence that the land-office department determined that this tract of land was subject to entry under the desert land act. This was in the nature of an adjudication by the proper designated department of government; and, without a direct impeachment for fraud of this determination by the department, the ascertainment is final and conclusive upon the courts. As said by Mr. Justice Brewer, in U. S. v. Budd, 144 U. S. 167, 168, 12 Sup. Ct. 579:

"But after all, the question is not so much one of law for the courts, after the issue of the patent, as of fact, in the first instance, for the determination of the land officers. The courts do not revise their determination upon a mere question of fact. In the absence of fraud or some other element to invoke the jurisdiction and powers of a court of equity, the determination of the land officers as to the fact whether the given tract is or is not fit for cultivation is conclusive. There is, in such cases, no general appeal from the land officers to the courts, and especially after the title has passed, and the money been paid."

The bill of complaint in this case does not attack what is known as the filing proceedings, in which the desert character of the land was determined, but is lodged wholly against the final proof of entry, made at the end of the three years, for obtaining the patent. What is the proof required by the last provision aforesaid of the statute? It is "satisfactory proof to the register and receiver of the reclamation of said tract of land in the manner aforesaid." The charging part of the bill, in this particular, is that the affidavits for final entry were untrue; but it is not distinctly averred that the applicants knew the affidavits were false. In the closing paragraph it is alleged that a false statement was made by her, and confirmatory affidavits were produced by her, with the fraudulent purpose and intent of imposing upon the register and receiver and "the officers of your ora-

tor." This presented an essential matter argumentatively, and left to inference what should have been directly charged; but, as this objection was not struck at by demurrer, the substantive matter averred may be indulgently treated. In the search after fraud, the inquiry must be limited to such matters as the statute requires to be established in making the final proof. This proof is "satisfactory proof to the register and receiver of the reclamation of said tract of land in the manner aforesaid." "The manner aforesaid" evidently refers back to the first clause, and to the words "by conducting water upon the same."

This statute, of course, in all its provisions, should receive such construction as will reasonably carry out and effectuate the legislative intent. It was the manifest purpose of congress to hold out to the citizens of the United States an inducement to reclaim the waste and desert lands of the public domain, and thus render them subservient to the uses of husbandry by process of irrigation. This was to be accomplished by such a system of ditches as would carry to the subdivisions of the land, capable of being reached by the surface flow, a supply of water such as, when let out of the ditches by draw gates or smaller ditches, might spread over the accessible parts, and stimulate vegetable life. If the main ditches were thus constructed, with the acquired adequate supply of water to irrigate the lands for the purpose of cultivation in the ordinary method of carrying it out over the surface of the ground, we think the reclamation contemplated by the statute was accomplished, without showing that this appropriation was followed by actual use and cultivation. This seems to be in accord with recent rulings of the land-office department. Dickinson v. Auerbach, 18 Land Dec. Dep. Int. 16; Instructions of Secretary Teller to Commissioner McFarlan, 3 Land Dec. Dep. Int. 385. The courts, in dealing with the rights of settlers and locators under these land laws, have regard to the rulings and regulations of the department, when they do not contravene the letter and spirit of the statute. Orchard v. Alexander, 157 U. S. 383, 15 Sup. Ct. 635.

The government, on the trial of this case, put in evidence a grant of water supply to the claimant, made to her between the filing and the final proof of entry, and made no sufficient countervailing proof of its inadequacy. On these issues of fact as to the sufficiency of the ditching and irrigation, the trial court in its opinion found in the record was satisfied, from the evidence, that outside of the high points, incapable of irrigation or cultivation, "the weight of the testimony shows that sufficient water flowed in the streams to irrigate all that portion of the entries susceptible of irrigation. In any event, it, falls far short of proving that any misrepresentation was intentionally made on that subject." The conclusion of fact, on the evidence, reached by the trial court, will not be disturbed, in the absence of such apparent misconception of the weight of testimony as in our judgment would render the conclusion palpably unjust.

The remaining question for determination is: What was the effect of the amendment to the bill by which the Salina Stock Company was brought into the case? Counsel for the government has argued the appeal as if the pleadings presented the case of a fraudulent com-

bination between Mrs. Mackintosh and said company, by which it was arranged, in contravention of the spirit of the statute, that she should obtain this patent as the mere instrument of the company, and then transfer the title to it, as the real party in interest, whereby this corporation got by indirection the effect of an entry which it could not make directly. But this is neither the case presented in the bill nor satisfactorily established by the evidence. The gravamen of the amended bill is (1) that the company took the deed from the patentee with notice of the fraudulent means whereby the patent was procured, and (2) that the entry was made and the patent obtained for the benefit of the company. No fraudulent conspiracy is averred to accomplish this result, nor is it alleged or shown that the land was entered with the money of the company; but, on the contrary, the bill distinctly alleges that the filing money of 25 cents. per acre and the final purchase money of $1 per acre were paid by the patentee. There is nothing in the statute denouncing a mere intention on the part of the locator to transfer his or her title, when perfected, for the benefit of even a corporation, when the locator pays the purchase money and complies with the requirements of the statute respecting irrigation. In such case, if the patent be issued to her, she could transfer to whom she pleased. As said by Mr. Justice Brewer, in U. S. v. Budd, 144 U. S. 163, 12 Sup. Ct. 577:

"The act does not in any respect limit the dominion which the purchaser has over the land after its purchase from the government, or restrict in the slightest his power of alienation. * * * If, when the title passes from the government, no one save the purchaser has any claim upon it, or any contract or agreement for it, the act is satisfied."

Neither was there any evidence offered on behalf of the government impeaching the consideration price expressed in the deed from Mrs. Mackintosh to the company. It is true the evidence shows that Mrs. Mackintosh and Mrs. Chambers, during the transactions in question, were the wives of two of the promoters and directors of the Salina Stock Company; and there was evidence of an inferential character that the work of irrigation done on the land was under the direction of the agents of the company, and the inference might not be a violent one that this improvement was done at the expense of the company. But these discrediting circumstances were not sufficient, in the opinion of the trial court, to overcome the other conspicuous and persuasive facts that the patentees paid with their own money, as the bill shows, the whole purchase money of this land, and that they acquired in their own name the right of water supply, and the further fact that there was no reliable evidence tending to show that the valuable consideration expressed in the deeds of conveyance to the stock company was fictitious.

In view of the allegations of the bill and the proofs, we fail to find sufficient grounds for overruling the conclusion of the court below. The decrees in both cases are, therefore, affirmed.