358 P.2d 322

David C. DAVIS, J. W. Spray and Jay Bateman, members of and constituting the Board of Supervisors of Pinal County, Arizona, Appellants,

v.

D. R. BRITTAIN, John O. Combs and J. G. Waggoner on behalf of Petitioners, Appellees.

In the Matter of the Petition of Certain Freeholders for the Formation of an Electrical District in Pinal and Maricopa Counties, Arizona.

No. 6728.

Supreme Court of Arizona.

Dec. 30, 1960.

Rehearing Granted April 25, 1961.

T. J. Mahoney, County Atty., Pinal County, for appellants.

Stokes, Bagnall & Moring, Coolidge and Kramer, Roche, Burch & Streich, Phoenix, for appellees.

Nicholas H. Powell, Perry Ling, Snell & Wilmer, Jennings, Strouss, Salmon & Trask, and Evans, Kitchel & Jenckes, Phoenix, Wolfe & Beeks, and Darnell, Holesapple, McFall & Spaid, Tucson, amici curiae.

LAURENS L. HENDERSON, Superior Court Judge.

The appellants in this case are the members of the Board of Supervisors of Pinal County, Arizona. The appellees are certain land owners in Pinal County who petitioned the said Board of Supervisors to organize an electrical district under the Electrical District Act of Arizona for the purpose of furnishing power for irrigation

water wells. The Board of Supervisors denied the petition to organize the power district and an appeal from that ruling was taken by the land owners to the superior court, which reversed the order of the Board, and ordered the Board of Supervisors to organize the proposed district in accordance with the provisions of the said Electrical District Act. The Board of Supervisors prosecuted this appeal from the order of the superior court.

The lands concerned herein comprise approximately 51,000 acres lying in what is generally known as the Queen Creek area, partly in Maricopa County and principally in Pinal County. Substantially all of the land area is under cultivation, having been developed as farm lands through irrigation from water wells. The power to pump the water has been by gas supplied by Arizona Public Service Company and electricity supplied by that company and the Salt River Project.

Electrical districts organized under the Arizona Electrical District Act get priority for power from the Arizona Power Authority, which Authority gets its power from the Colorado River and other sources. All of the power of the Arizona Power Authority is contracted until the year 1970, but the possibility exists that such contracts may be terminated after 1962, and that thereafter a reallocation of power might be made to include districts organized and applying for power no later than 1959, which would include the proposed district with which we are here involved; hence, the attempt by the petitioning land owners to form a district and to qualify for power which might be allocated to it after 1962 from the Arizona Power Authority.

The primary purpose of the petitioning land owners is to form a power district under the Electrical District Act in order to obtain cheaper power for irrigation of their farm lands. The difference in cost in Power Authority electricity obtained under an electrical district so formed as compared with existing power would amount to a saving of about $3.81 per acre per year. Practically all the lands susceptible of cultivation in this area have been heretofore put under cultivation.

It is uncontroverted that land in this area cannot be dry farmed and in its original natural state was desert land unable to produce agricultural crops without irrigation. The area lies within that portion of the State of Arizona where the legislature has prohibited the drilling of new water wells.

The section of the statute in question under which the petitioners sought to organize an electrical power district and which relates specifically to the requirement that the Board of Supervisors make certain findings is Section 30–505 A.R.S., 1956, which reads in part as follows:

"A. At the hearing on the petition called by the board of supervisors, it shall first proceed to determine whether the operations as proposed will constitute a public use. The board shall for such purpose determine:

"1. Whether the lands in the proposed district are arid lands.

"2. Whether they are fertile and reclaimable.

"3. Whether there is a supply of water which can be made efficiently available by the proposed power system.

"4. Whether the development reasonably certain to result from the production of power is of such interest and benefit to the whole district as to impress it with a public use."

Other paragraphs of that section of the statute outline for the Board the method of determining its findings and vest certain discretionary powers in the Board. The statute provides that the decision of the Board shall be binding upon all persons interested unless reversed on appeal as provided by said Act.

Pursuant to this section, the Board of Supervisors of Pinal County found and ruled as follows:

"After motion made and duly seconded and unanimously carried, said Board denied the petition for the reasons and on the grounds that it is the decision of the Board:

"1. That lands in the proposed district are not arid lands.

"2. That said lands are fertile and have been reclaimed.

"3. That there is presently a supply of water furnished to the farmers in said area.

"4. And that the area within the boundaries of said proposed district has been developed and power is presently being served to said area."

Upon appeal to the superior court, the court set aside the order of the Board of Supervisors and the court made findings of fact and conclusions of law, under the foregoing statutory requirement, as follows:

"XI That the lands in the proposed District are arid lands.

"XII That the lands in the proposed District are fertile and reclaimable.

"XIII That there is a supply of water underlying the lands within the proposed district which can be made efficiently available by the proposed power system.

"XIV That the development reasonably certain to result from the production of power is of such interest and benefit to the whole District as to impress it with a public use."

The court then directed the Board to organize the proposed district and this appeal thereupon followed.

A basic question raised on this appeal is the nature of a trial de novo under Chapter 7, Laws 1923. A.R.S. § 30–509 provides that:

"A. Any person aggrieved by the decision of the board of supervisors may appeal * * * to the superior court of the county in which the hearing was held."

and A.R.S. § 30–511 provides that:

"A. The appeal shall be heard de novo by the superior court. * * *"

A.R.S. § 30–510 specifies that pursuant to notice of appeal, all papers filed in the controversy and a transcript of all records of the Board pertaining thereto, including the minutes and resolutions of the Board shall be sent to the Clerk of the Court. A.R.S. § 30–505 sets forth the findings and determination which the Board of Supervisors shall make, and vests in the Board discretionary power to make the determination of public use and also provides that the Board's decisions shall be binding upon all persons interested unless reversed on appeal, as in said chapter provided; this section further provides that if the decision is modified or affirmed, it shall be binding as modified or affirmed.

It is contended by the appellant that the jurisdiction of the trial court is limited to a determination of whether the action of the Board was contrary to law, arbitrary, capricious or unsupported by substantial evidence. Furthermore, it is contended in support of appellants' position that the superior court is without jurisdiction to make a determination because A.R.S. § 30–511 providing for a trial de novo on appeal to the superior court, is unconstitutional, and that, therefore, the findings of the Board, as made, are final and binding and not subject to review by the superior court.

This court has heretofore had occasions to discuss and pass upon questions involving trial "de novo". Duncan v. Mack, 59 Ariz. 36, 122 P.2d 215, 218, involved an appeal from a ruling of the Superintendent of the Department of Liquor Licenses and Control. The statute (A.R.S. § 4–210) provides that the decision of the Superintendent shall be final regarding the issuance, renewal, suspension or revocation of liquor licenses unless the aggrieved party files an appeal with the superior court. The statute provides that the matter be heard de novo in the superior court. Therein, this Court, in holding that the superior court had complete freedom to pass upon the matter independently of the findings of the liquor license department, said:

"We hold, therefore, that on appeals from an inferior court or administrative board to the superior court, *unless the statute expressly provides otherwise*, the case will be heard by the

superior court in the same manner as though it were an original proceeding in that court, and while, as a matter of practice, due consideration should be given to the opinion of the lower tribunal as to the weight and credibility of the evidence, yet the superior court has jurisdiction to disregard that opinion and form its own independent conclusions upon the evidence. The trial court, therefore, acted within its jurisdiction in taking new evidence and forming its independent conclusions." (Emphasis supplied) .

In Manning v. Perry, 48 Ariz. 425, 62 P.2d 693, the appeal involved a ruling by the Land Department in regard to the leasing of state lands. The statute in question provided that appeals to the superior court from a ruling by the Commissioner on a lease of state lands should be had in the superior court as on an appeal from an appraisement. The section of the statute providing for an appeal on appraisement (Rev. Code 1928, Section 2963) spells out certain requirements and guides for the court to follow in conducting the appeal. There is no specific provision by statute for a trial de novo; and the opinion, while suggesting that the trial courts should defer their opinions as to the weight and credibility of the evidence to that of the trier of the facts in the first instance, announced that the superior court had the power to ignore the department's findings and to make its own independent findings. To the same effect is Lane v. Ferguson, 62 Ariz. 184, 156 P.2d 236.

Duncan v. Mack, supra [59 Ariz. 36, 122 P.2d 218], held that on a trial de novo before the superior court, pursuant to statutory authority therefor, the court could make its own independent conclusions on the evidence "unless the statute expressly provides otherwise." This last quoted proviso relates to possible statutory restrictions in the appeal proceeding in the superior court, not to proceedings in lower boards or commissions. Such statutory restrictions on the court have heretofore been made by the Legislature, for example, in appeals from rulings of the Arizona Corporation Commission under A.R.S. § 40–254 in matters involving public carriers. While the appeal therein is in the nature of a trial de novo, a separate action is required to be brought to set aside the ruling of the Commission, and the statute specifically provides that the party adverse to the commission, *on appeal to the superior court*, must show by clear and satisfactory evidence that the ruling of the Commission is unreasonable or unlawful. See Arizona Corporation Commission v. People's Freight Line, Inc., 41 Ariz. 158, 16 P.2d 420; Arizona Corporation Commission v. Southern Pacific Company et al., 87 Ariz. 310, 350 P.2d 765. So we note that the Legislature has, on occasion, provided for a hearing on an appeal to the superior

court "otherwise" than as in an original proceeding.

 It is our opinion and we hold that a trial de novo is, as its name implies, a trial "anew" and if the Legislature intends to restrict an indepedent determination by the trial court in proceedings where the Legislature has provided for a trial de novo, the Legislature must also by statute spell out any such limitation on the trial court. Where the statute gives the discretion and final determination to a lower board or commission and makes such determination final and conclusive, it has such conclusive effect only in the absence of an appeal to the superior court. In the instant case, no legislative limitation restricts the trial court from making its own independent findings under the legislative grant of the right to a trial de novo on appeal from the Board of Supervisors.

A question is raised as to the constitutionality of the procedure to appeal to the superior court. The argument against the constitutionality of this procedure is based on the proposition that under the separation of powers of government constitutionally extant, the county is a political subdivision of the state and the Board of Supervisors is a subordinate agency of the legislative branch of government and that the Legislature, in delegating to the Board the right to make a determination on what is or what is not a public use under the statute in question, vested complete and exclusive discretionary authority to administer this law in the Board of Supervisors; it is argued that the Legislature cannot confer on the court legislative power or a right to substitute the court's judgment for that of the Board. It is claimed that the Board of Supervisors, acting in an administrative capacity as a subordinate agency of the legislative branch, stands on a different basis in relation to this question than do the various other administrative boards and commissions of the state. It is argued that no jurisdiction constitutionally exists to allow an appeal from the ruling of the Board of Supervisors to the superior court.

The Constitution of Arizona granting jurisdiction to the superior courts of this state, in pertinent part, provides in Article 6, Section 6, A.R.S., as follows:

"* * * Said court shall have such appellate jurisdiction in cases arising in justices' and other inferior courts in their respective counties as may be prescribed by law. * * *"

It is to be noted that the Legislature, in A.R.S. § 12–124 has by statute amplified upon the jurisdiction of the superior court by providing as follows:

"A. The superior court shall have appellate jurisdiction in all actions appealed from justices of the peace, inferior courts, boards and officers from which appeals may, by law, be taken."

And as above noted, the Legislature also by statute has, in A.R.S. § 30–511 provided that an appeal from the Board of Supervisors may be had by a trial de novo.

Can the Legislature constitutionally expand the appellate jurisdiction of the superior court beyond the grant of jurisdiction in Article 6, Section 6, supra?

This Court has passed upon the constitutionality of appeals from state boards to the superior court. We have held that while the right to an appeal does not exist at common law, it does have its origin in the constitution or in statutes, and when the right of appeal is neither given nor denied by the constitution, it is then within the discretion of the Legislature to grant such right or take it away, to enlarge or circumscribe the remedy and to say what cases and under what circumstances appeals may be taken. We have held that the constitution of Arizona is not to be considered a grant of power to the Legislature, but a limitation upon the power of that body. Cox v. Superior Court, 73 Ariz. 93, 237 P.2d 820; Earhart v. Frohmiller, 65 Ariz. 221, 178 P.2d 436.

In Cox v. Superior Court, supra, [73 Ariz. 93, 237 P.2d 822], we said:

"* * * We expressly hold that unless the constitution has prohibited the legislature from enlarging the appellate jurisdiction of the superior court, it has, in exercising the sovereign power of the state, the power to enlarge but not diminish such appellate jurisdiction."

We hold, therefore, that unless a limitation appears within the constitution, the Legislature has freedom of action within its area as the legislative branch of government to provide for and expand the jurisdiction of the superior court. A.R.S. §§ 12–124 and 30–511 are proper extensions of the jurisdiction of the superior court.

These principles apply alike to appeals from rulings of the Board of Supervisors as to appeals from other boards or commissions of the state. Peters v. Frye, 71 Ariz. 30, 223 P.2d 176.

The last cited case was one involving a writ of mandamus sought against the Board of Supervisors of Maricopa County. The question of delegation of power to a Board of Supervisors was considered by this Court. This Court in that case held that the power granted to the Board of Supervisors was a discretion to be exercised in the administration of the law and not a delegation of power to make a law, and hence, the action of the Board was not violative of the Constitution. This Court quoted with approval from People ex rel. Thomson v. Barnett, 344 Ill. 62, 176 N.E. 108, 113, 76 A.L.R. 1044 as follows:

"* * * Delegation of power to make the law is forbidden as necessarily involving discretion as to what

the law shall be, but there can be no valid objection to a law which confers an authority or discretion as to its execution, to be exercised under and in pursuance of the law itself. * * *"

The distinction between a delegation of power by the Legislature to a subordinate board or agency of the state to make or enact laws (which is illegal) and a legislative grant of authority to a subordinate board or official conferring the right to exercise administrative discretion in administering laws enacted by the Legislature has long been recognized in this jurisdiction. Simms v. Round Valley Light & Power Co., 80 Ariz. 145, 294 P.2d 378; Peters v. Frye, supra, and Loftus v. Russell, 69 Ariz. 245, 212 P.2d 91.

The Supreme Court of Oregon in Livesay v. DeArmond, 131 Or. 563, 284 P. 166, 170, 68 A.L.R. 422, 427, expresses itself on this point as follows:

"* * * Since the power to make a law includes discretion as to what it shall be, this power can never be delegated, but the decisions display an increasing tendency, due to the complexity of our social and industrial activities, to hold as nonlegislative authority conferred upon commissions and boards, to determine the facts or state of things upon which the law intends to make its action depend. * * *"

For a Board of Supervisors to make a determination of facts under a legislative grant of authority and to exercise its discretion in making such a determination is more a process of fact-finding than of law-making; hence, that process is not one of performing a legislative function. A court, in reviewing such a finding and taking evidence on a trial de novo, likewise is making a determination of facts and applying the law thereto and it is thus acting in a judicial capacity, and is not performing a legislative function. Accordingly, we hold that the delegation of the Board of Supervisors by the Legislature of the powers enumerated in Section 30-505 is a proper delegation of power in that the board acts under a legislative grant of authority to execute the law in question and that the trial court, under its grant of authority to conduct a trial de novo, was not invading a legislative prerogative in making its determination of facts and entering a judgment based thereon. The superior court, therefore, had the constitutional power to make its findings and conclusions on the record and evidence before it independent of the findings of the Board of Supervisors.

We now take up the question of whether the formation of the proposed electrical power district, pursuant to the legislative Act in question, is authorized under the law and the evidence.

The four statutory factual requirements with which we are concerned in Section 30–505, subd. A have been hereinabove set forth. The evidence in the case, whether derived from testimony before the Board of Supervisors or before the trial court, is in essence practically without dispute and the parties so agree. The lands in this area are fertile and require the introduction of water by artificial means in order that they may produce agricultural crops due to a deficiency in rainfall in this area.

Appellees argue that the statutory requirements have been met because the land in question can be brought into greater productivity if cheaper power is available by growing more varied crops and that the farmers can stay in business longer and pay more taxes and thus the state is benefited. Admittedly, the chief object of appellees is to secure cheaper power to achieve the aforesaid claimed benefits.

The objects and purposes of reclamation laws are to reclaim land for productive purposes, generally either by draining swamp lands or by irrigating arid desert lands. None of the cases cited by the parties bears directly upon the factual situation in this case. We have here a case where the area in question at the times concerned was in production with crops being grown by irrigation, and appellees seek to superimpose on the existing operating irrigation district a new proposed power district, the lands of the various petitioners (appellees) being "checkerboarded" over the existing irrigated land area.

Reclaimable lands, in the contemplation of the law, are to be considered as lands in their natural state. In the arid desert areas of the western part of the United States, including Arizona, this means raw desert lands which are susceptible of being made productive agriculturally by the introduction of water by irrigation, and the character of the land to be reclaimed is determined at the time the reclamation process is inaugurated. Brown v. Electrical District No. 2, 26 Ariz. 181, 223 P. 1068; Kinne v. Burgess, 24 Ariz. 463, 211 P. 573. And see, Fallbrook Irrigation District v. Bradley, 164 U.S. 112, 17 S.Ct. 56, 41 L.Ed. 369; United States of America v. Mackintosh, 8 Cir., 1898, 85 F. 333 and Hershey v. Reclamation District No. 108, 200 Cal. 550, 254 P. 542.

We note the definition given in Webster's Dictionary as to the meaning of "reclamation". It is defined as meaning "recovery or restoration to a better or useful state, as of wasteland, desert, etc. by ditching, filling, or irrigating."

This Court in the Brown case, supra, in discussing reclamation methods by either drainage or irrigation said:

"* * * Whichever method has been necessary the courts have uniformly upheld them. In the one case the effort has been to bring the water

to the land, in the other to drain the water from the land, the purpose all the time being to get the land in a condition or state of production so that it might be utilized for the general benefit and welfare of mankind." 26 Ariz. 187, 223 P. 107C

The United States Court of Appeals in United States v. Mackintosh, supra, commented on the purposes of reclamation by irrigation, as follows:

" * * * It was the manifest purpose of congress to hold out to the citizens of the United States an inducement to reclaim the waste and desert lands of the public domain, and thus render them subservient to the uses of husbandry by process of irrigation. This was to be accomplished by such a system of ditches as would carry to the subdivisions of the land, * * * a supply of water * * *. If the main ditches were thus constructed, with the acquired adequate supply of water to irrigate the lands for the purpose of cultivation * * * we think the reclamation contemplated by the statute was accomplished, * *." 85 F. 337

■ In light of the foregoing, we now look to, subd. A, paragraph 2 of Section 30–505 wherein the Legislature requires that the lands intended to be included in an irrigation district be "reclaimable". It

seems to us that the object of this Arizona statute, like any usual reclamation act in an arid area, is to reclaim desert land for productive agricultural purposes and that under the facts and circumstances of this case, the objects and purposes of the act have been already served and satisfied. Reclamation acts are not normally enacted in regard to productive lands or lands already under cultivation. To say that fertile lands now under cultivation and which are productive are intended to be the subject of statutory reclamation processes comes within neither a logical nor common sense construction of such laws. To make available cheaper power in an existing area already under irrigation is a more proper subject matter for legislative action than for specious judicial construction.

■ It seems clear to us and we so hold that these fertile arid desert lands which have already been brought under cultivation and which are producing agricultural crops as a result of an irrigation system and having in fact been reclaimed from their natural state must in law be considered as reclaimed lands and thus not "reclaimable" as intended by the Arizona statute.

The conclusion of the trial court under the second requirement of the statute in question was, therefore, error. Consequently, it is unnecessary, under our practice, to consider further questions raised by appellants.

The case is reversed and the lower court directed to enter appropriate judgment in favor of appellants.

STRUCKMEYER, C. J., and PHELPS, UDALL and JENNINGS, JJ., concur.

NOTE: The Honorable CHARLES C. BERNSTEIN, being disqualified, the Honorable LAURENS L. HENDERSON, Judge of the Superior Court, Maricopa County, was called to sit in his stead and participate in the determination of this decision.