978 P.2d 1282

**3613 LIMITED, an Arizona corporation;
Elizabeth M. Brazee, a widow,
Plaintiffs–Appellants,**

v.

**DEPARTMENT OF LIQUOR LICENSES
AND CONTROL, an agency of the State
of Arizona, Defendant–Appellee.**

No. 1 CA–CV 98–0035.

Court of Appeals of Arizona,
Division 1, Department E.

April 20, 1999.

Janet A. Napolitano, The Attorney General by Daniel R. Christl, Assistant Attorney General, Phoenix, Attorneys for Defendant–Appellee.

Law Office of Harvey M. Yee by Harvey M. Yee, Phoenix, Attorney for Plaintiffs–Appellants.

## OPINION

THOMPSON, Presiding Judge

¶ 1 A business operating a "topless" bar and its owner appeal from the trial court's affirmance of an administrative decision that suspended their liquor license unless the controlling person ceased her business association with a convicted felon.[1] Appellants raise

1. Collectively referred to as "appellants."

a number of constitutional challenges to the applicable statute. We reject those challenges and affirm the trial court.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 On April 7, 1994, the Arizona State Liquor Board granted a spirituous liquor license to appellant Elizabeth Brazee, the agent for, president, and 100% shareholder of 3613 Limited. The City of Phoenix requested a rehearing, which was granted and held on February 2, 1995.

¶ 3 The director of the Department of Liquor (department) participated in the rehearing and objected to the issuance of the license based on an allegation that Dennis Mondavano, who had two felony convictions, was actually managing the business. Mondavano's convictions were for possession of narcotic drugs in 1987 and conspiracy to defraud the United States/I.R.S. in 1988. He had been released from federal prison in January 1991 after serving more than three years of a four year sentence on the federal conspiracy charge.

¶ 4 The State Liquor Board voted four to three to uphold the original license application approval. However, a department investigator who had investigated the relationship between Brazee and Mondavano reported that some of Mondavano's testimony at the rehearing was false. By letter dated February 16, 1995, the department told Brazee to cease her business association with Mondavano because the association created a reasonable risk that she would fail to conform to the law. The department issued a complaint against 3613 Limited and Brazee in August 1995.

¶ 5 The complaint alleged that Brazee was knowingly associated with Mondavano, a convicted felon who had engaged in racketeering, which provided grounds for disciplinary action under Ariz.Rev.Stat. Ann. (A.R.S.) § 4–210(A)(12). Section 4–210(A)(12) provides:

(A) The director may suspend, revoke or refuse to renew any license issued pur-

suant to this chapter for any of the following reasons:

* * * *

(12) The licensee or controlling person knowingly associates with a person who has engaged in racketeering, as defined in Section 13–2301, or has been convicted of a felony, and the association is of such a nature as to create a reasonable risk that the licensee will fail to conform to the requirements of this title or of any criminal statute of this state.

¶ 6 The hearing officer found that after Mondavano was released from prison, he met Brazee, who was then in her mid–70's. Mondavano and Brazee became friends. In late 1992 or early 1993, Mondavano disclosed to Brazee that he was a convicted felon. Shortly thereafter, she began paying him $1500 a month for personal services and investment advice.

¶ 7 Brazee looked for commercial real estate investments, and Mondavano learned of a real estate investment in a topless bar; Brazee purchased a majority interest in the realty for the establishment. After consulting with Mondavano and her son, Brazee decided to build and operate a topless bar. Mondavano located a site, which Brazee purchased, and after she received the liquor license, she engaged Mondavano as the construction project manager.

¶ 8 Mondavano became an employee of 3613 Limited in the late fall of 1994. The hearing officer found that his duties for the licensee included continuing oversight of remaining construction and improvements; compiling, checking and calling in employee time; coordinating maintenance; maintaining and repairing equipment; maintaining and reviewing files, reports, and journals; correlating sales figures for sales tax returns; sitting in on some interviews; and preparing checks for Brazee's signature. He also assisted in closing registers, writing newspaper and radio advertisements, selecting name entertainment, bartending, and working as a doorman. His personal services to Brazee included investment and general advice, transportation, opening mail, keeping records, completing deposit slips, collecting rent from tenants who occupy a portion of the realty, and auditing and reviewing rents received for property tax purposes. Brazee considered Mondavano her best friend, trusted his judgment, and would have had him run the licensed business except for her belief that he could not be licensed.

¶ 9 The hearing officer concluded that the evidence clearly showed that the nature of the association was such that Mondavano could exercise a great deal of influence over Brazee as the licensee. According to the hearing officer, the evidence did not show that Brazee would allow herself to violate the law based on Mondavano's influence. The hearing officer found, however, that Mondavano had ample opportunity to "cause [Brazee] to fail to conform to the law," and that under A.R.S. § 4–210(B)(2) Brazee would be liable for the acts or omissions of her employees. The hearing officer thus concluded that the duties and other activities engaged in by Mondavano as part of his association with and employment by the licensee were such that he had ample opportunity to cause the licensee to fail to conform to the law.

¶ 10 As to the question whether Mondavano would or was likely to cause the licensee to violate Title 4 or any criminal law, the hearing officer noted that the state did not present any specific evidence that Mondavano was engaged in or planning activities that would cause the licensee to run afoul of the law. However, the hearing officer found that Mondavano's untruthful testimony concerning his felony convictions showed that he could not be relied upon to conform to the requirements of Title 4 or any criminal statute.

¶ 11 The hearing officer recommended that the licensee be found in violation of A.R.S. § 4–210(A)(12) and that the license be suspended until the licensee and Brazee "terminate all association, whether formal or informal, including but not limited to, business, employer-employee, contractual, advisory, with Dennis Mondavano, as such association relates to the organizational, operational or other business activities in any form, of the corporate licensee." The suspension would

not take effect if Brazee signed a statement of full compliance with the order.

¶ 12 The director of the department adopted the findings and conclusions of the hearing officer and ordered the suspension of the license unless Brazee terminated her business association with Mondavano. The licensee, 3613 Limited, appealed the director's order to the State Liquor Board. In its appeal, 3613 Limited argued that the statute at issue was unconstitutionally vague and that the director should have adopted rules for enforcing the statute. The board affirmed the director's order.

¶ 13 Brazee and 3613 Limited filed a complaint for review of the administrative decision. They argued that the department's administrative order should be reversed because (1) A.R.S. § 4–210(A)(12) is an administrative scheme of prior restraint; (2) the statute prohibits the right to association for the purpose of engaging in activities protected by the first amendment; (3) A.R.S. § 4–210(A)(12) treats convicted felons who are employees differently than A.R.S. § 4–202(D) treats convicted felons who apply for a liquor license; (4) the department should have adopted rules to enforce A.R.S. § 4–210(A)(12); (5) the department should be estopped from raising the issue of Mondavano's association in August 1995 because the association was disclosed to the liquor board in February 1995; and (6) the order is based on unreliable hearsay evidence and is not supported by substantial evidence.

¶ 14 The trial court found that substantial evidence in the record supported the administrative decision. It rejected the appellants' estoppel, prior restraint, equal protection, and right of free association arguments. However, before reaching a final ruling in the case, the court asked the parties to further brief two issues: whether the statutory delegation of authority to a department that did not adopt rules was too broad to be sustained as a matter of constitutional or administrative law; and whether, in the absence of rules, the statutory standard was too vague to be enforced.

¶ 15 After additional briefing and oral argument, the court ruled that the department's action in the case was in accordance with the statutory intent and was a legitimate exercise of regulatory authority. It therefore entered judgment affirming the liquor board's decision. Brazee and 3613 Limited timely appealed from the judgment. We have jurisdiction pursuant to A.R.S. §§ 12–120.21(A)(1) and 12–2101(B).

## DISCUSSION

### I. Standard of Review

 ¶ 16 Ordinarily in an appeal from an administrative decision pursuant to the Administrative Review Act, A.R.S. §§ 12–901 to 12–914, the court's review is limited to deciding whether the administrative action was arbitrary, capricious, or an abuse of discretion. *See Berenter v. Gallinger,* 173 Ariz. 75, 77, 839 P.2d 1120, 1122 (App.1992) (citing *Havasu Heights Ranch and Dev. Corp. v. Desert Valley Wood Prod., Inc.,* 167 Ariz. 383, 386, 807 P.2d 1119, 1122 (App.1990)). In this appeal, however, appellants have not asked us to determine whether there is substantial evidence to support the administrative decision. Instead, all of the issues are legal questions concerning the constitutionality of A.R.S. § 4–210(A)(12) and the manner in which it was applied.

 ¶ 17 We are not bound by the administrative agency's conclusions on questions of law. *See Siegel v. Arizona State Liquor Bd.,* 167 Ariz. 400, 401, 807 P.2d 1136, 1137 (App.1991) (citing *U.S. Parking Systems v. City of Phoenix,* 160 Ariz. 210, 211, 772 P.2d 33, 34 (App.1989)). We presume statutes to be constitutional and will not declare one unconstitutional unless we are convinced beyond a reasonable doubt that it is in conflict with federal or state constitutions. *See Stirewalt v. P.P.G. Industries, Inc.,* 138 Ariz. 257, 259, 674 P.2d 320, 322 (App.1983) (citing *Chevron Chemical Co. v. Superior Court,* 131 Ariz. 431, 438, 641 P.2d 1275, 1282 (1982)). We review *de novo* a challenge to the constitutionality of a statute. *See Little v. All Phoenix South Community Mental Health Center, Inc.,* 186 Ariz. 97, 101, 919 P.2d 1368, 1372 (App.1995) (citing *Norquip Rental Corp. v. Sky Steel Erectors, Inc.,* 175 Ariz. 199, 202, 854 P.2d 1185, 1188 (App. 1993)).

## II. Does A.R.S. § 4–210(A)(12) Contain Adequate Standards?

¶ 18 Appellants assert that A.R.S. § 4–210(A)(12) contains no standards and that neither of its material terms, "association" and "reasonable risk," is defined in the liquor laws. They thus argue that the absence of standards and lack of definition of the material terms render the statute unconstitutional.

¶ 19 A statute that gives unlimited regulatory power to a commission, board, or agency without prescribed restraints offends the constitution. *See Southern Pac. Co. v. Cochise County,* 92 Ariz. 395, 404, 377 P.2d 770, 777 (1963). In other words, "[t]he board must be corralled in some reasonable degree and must not be permitted to range at large and determine for itself the conditions under which a law should exist and pass the law it thinks appropriate." *State v. Marana Plantations, Inc.,* 75 Ariz. 111, 114, 252 P.2d 87, 89 (1953). Unless delegation of legislative power is limited by standards adequate to guide the administrative agency in the exercise of the power granted, such statutory delegation is unconstitutional. *See id.*

¶ 20 The legislature may set a general standard for the guidance of an agency and then leave the administrative details to the discretion of the agency. *See State v. Gee,* 73 Ariz. 47, 51, 236 P.2d 1029, 1031 (1951). Moreover, the legislature "commit[s] to an administrative board the duty of ascertaining when the facts exist which call into activity certain provisions of the law.... The law is made by the Legislature; the facts upon which its operation is dependent are ascertained by the administrative board." *Id.* at 52, 236 P.2d at 1032 (quoting *Borgnis v. Falk Co.,* 147 Wis. 327, 133 N.W. 209, 219 (1911)).

¶ 21 The legislature may not delegate its power to make laws. *See Lake Havasu City v. Mohave County,* 138 Ariz. 552, 559, 675 P.2d 1371, 1378 (App.1983). However, the legislature may authorize an agency or department to exercise its discretion in administering the law. *See id.* Such discretion is properly delegated if it is defined with sufficient clarity to enable the agency or board to recognize its legal bounds. *See id.* However, "[t]he standards laid ·down by the legislature may be broad and in general terms. The legislature does not have to supply administrative officials with a specific formula to guide them when flexibility and adaptability are necessary." *Ethridge v. Arizona State Bd. of Nursing,* 165 Ariz. 97, 104–05, 796 P.2d 899, 906–07 (App.1989) (citations omitted). A board's determination of facts under a legislative grant of authority does not constitute a legislative function. *See Davis v. Brittain,* 89 Ariz. 89, 97, 358 P.2d 322, 327 (1960), *modified on other grounds,* 92 Ariz. 20, 373 P.2d 340 (1962).

¶ 22 The statute at issue, A.R.S. § 4–210(A)(12), provides that the director may suspend a liquor license if

> [t]he licensee or controlling person knowingly associates with a person who has engaged in racketeering, as defined in § 13–2301, or has been convicted of a felony, and the association is of such a nature as to create a reasonable risk that the licensee will fail to conform to the requirements of this title or of any criminal statute of this state.

We hold that the standards set forth in this statute are sufficiently clear and limited to guide the department in carrying out the purposes of the legislation. The terms "associates with" and "association" are not terms of art but instead are commonly understood to refer to engaging in a continuing relationship involving friends, partners, or colleagues. No statutory definition is necessary for the department and licensees to understand the scope of the provision.

¶ 23 We also reject appellants' argument that the statute is unconstitutional because the term "reasonable risk" lacks definition. In the context of the statute, this term clearly means that it would be sensible, logical, or rational to believe that the licensee may fail to conform to licensing requirements due to the particular association. Determining whether a "reasonable risk" is present involves the weighing of facts. As noted above, once the legislature sets a general standard for the work of the administrative

agency, the agency is to ascertain whether facts exist to apply certain provisions of the law. That is what happened here; the department determined that facts existed under which the director could suspend appellants' liquor license for the reasons expressed in A.R.S. § 4–210(A)(12).

¶ 24 The grounds for suspension of a license must be expressed somewhat generally to cover a variety of factual situations. If the legislature were too precise in its standards for suspension of a license, the statute would have unduly limited application. Section 4–210(A)(12) contains sufficient detail to put licensees on notice of prohibited conduct while allowing the department discretion to gauge the facts of each alleged violation. Therefore, we conclude that A.R.S. § 4–210(A)(12) is not unconstitutional for lack of standards.

¶ 25 The types of activity prohibited by A.R.S. § 4–210(A)(12) are specific enough to enable the department to find facts and then to determine whether the statute is violated. In this case, the licensee clearly associated with a convicted felon when she hired him to manage many aspects of the liquor business and relied on his advice. The department did not have to determine what types of association would be covered by the statute; the statute applies only when the facts show that "the association is of such a nature as to create a reasonable risk that the licensee will fail to conform to the requirements of this title or of any criminal statute of this state." Determining whether such an association exists involves factual findings, not the legislating of standards. Here, the findings that Brazee relied on Mondavano to run the liquor business and that Mondavano gave false testimony to the liquor board and hearing officer support the conclusion that a reasonable risk of nonconformance existed.

### III. Should the Department Have Adopted Rules to Enforce A.R.S. § 4–210(A)(12)?

¶ 26 Appellants argue that the department should have adopted rules to describe the standards to be utilized for alleged violations of A.R.S. § 4–210(A)(12). They maintain that the department's enforcement of the statute was faulty because it failed to put licensees on notice of the conduct that violates the statute. They bolster their argument with a statement made by the hearing officer in his report and recommendation:

> The applicable statute has not been given any specific application or interpretation by the Department of Liquor. It does not set forth identifiable standards by which an association may be judged to determine what in its nature will create the reasonable risk of failure by the Licensee to conform to the requirements of Title 4 and criminal statutes.

In appellants' view, without an adopted rule that provides standards for judging associations under A.R.S. § 4–210(A)(12), liquor licensees have no notice whatsoever of the conduct the department seeks to prohibit.

¶ 27 Notwithstanding the statement by the department's hearing officer, we believe department rules may be unnecessary in this instance, because A.R.S. § 4–210(A)(12) itself is about as specific as it can be without being so detailed that it could be interpreted as excusing behavior the legislature meant to proscribe. The statute clearly gives notice that a licensee who knowingly associates with a racketeer or convicted felon in a manner that impacts the licensed business risks suspension. Perhaps the department could promulgate rules to define when "the association is of such a nature as to create a reasonable risk that the licensee will fail to conform to the requirements of this title or of any criminal statute of this state" by providing that such associates who manage the business, keep the books, or hire employees fall within the statute. However, we can envision that it would be difficult to cover every factual situation under which the statute could apply, and in some circumstances, the listed duties might not involve a reasonable risk of nonconformance.

¶ 28 It is not uncommon in licensing matters for valid standards to be somewhat general. For example, in *Strigenz v. Department of Regulation and Licensing Dentistry Examining Bd.*, 103 Wis.2d 281, 307 N.W.2d 664 (1981), the court examined whether the dentistry examining board's statutory authority to discipline a licensed dentist for

"unprofessional conduct" was unconstitutionally vague where the board had not enacted any specific rules listing prohibited acts. It decided that the authority of the board was valid based in part on a statement by the United States Supreme Court:

> The function of filling in the interstices of the Act should be performed, as much as possible, through this quasi-legislative promulgation of rules to be applied in the future. But any rigid requirement to that effect would make the administrative process inflexible and incapable of dealing with many of the specialized problems which arise.... Not every principle essential to the effective administration of a statute can or should be cast immediately into the mold of a general rule. Some principles must await their own development, while others must be adjusted to meet particular, unforeseeable situations. In performing its important functions in these respects, therefore, an administrative agency must be equipped to act either by general rule or by individual order. To insist upon one form of action to the exclusion of the other is to exalt form over necessity.

*Id.* at 668–69 (quoting *Securities and Exchange Comm'n v. Chenery Corp.*, 332 U.S. 194, 202, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947)).

¶ 29 Similarly, in *In re Wilkins*, 294 N.C. 528, 242 S.E.2d 829 (1978), the court considered a vagueness challenge to a statute that authorized revocation of a medical license where the licensee "has been guilty of any unprofessional or dishonorable conduct unworthy of, and affecting, the practice of his profession." *Id.* at 840. The court rejected the challenge, stating:

> It would obviously be futile to attempt to catalog in a statute, or in an order of the Board conditionally revoking the license of a practitioner, every conceivable improper practice in which the licensee is forbidden to engage. Neither the Federal nor the State Constitution requires such a tedious exercise in futility in order to save a disciplinary statute, or order, from attack on the ground of vagueness and overbreadth.... The test is whether a reasonably intelligent member of the profession would understand that the conduct in question is forbidden.

*Id.* at 840–41.

¶ 30 We conclude that it was not necessary for the department to adopt rules concerning A.R.S. § 4–210(A)(12) for a licensee to understand that the association in question here was forbidden. A liquor licensee should realize that hiring a felon convicted of defrauding the IRS and allowing that person to have significant influence in the operation of the licensed business, including providing tax advice, violates the statute. Therefore, we reject appellants' argument that the department should have adopted rules concerning A.R.S. § 4–210(A)(12).

## IV. Is A.R.S. § 4–210(A)(12) an Administrative Scheme of Prior Restraint?

¶ 31 Appellants argue that because the license was suspended based on the possibility that a future violation of liquor laws might occur, the department's action constituted prior restraint. They cite *Blount v. Rizzi*, 400 U.S. 410, 91 S.Ct. 423, 27 L.Ed.2d 498 (1971), asserting that under *Blount* the statute unconstitutionally promotes prior restraint because it inhibits the association of Brazee and Mondavano before any nonconformance with the law has occurred.

¶ 32 The postal regulation at issue in *Blount* constituted a prior restraint because it inhibited constitutionally protected expression. *Id.* at 416–22, 91 S.Ct. 423. However, engaging in the sale of liquor is not a form of first amendment expression, but rather a highly regulated enterprise subject to the state's police power. *See Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 716, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984); *Mathis v. Liquor Bd.*, 146 Ariz. 570, 572, 707 P.2d 974, 976 (App.1985) (liquor license is privilege subject to the state's police power).

¶ 33 We find no authority for the proposition that the doctrine recognizing unconstitutional prior restraints applies in situations other than those in which first amendment expressions are involved. Neither the maintenance of a liquor license nor the employment of a convicted felon to manage a

licensed liquor establishment is a mode of protected expression. Section 4–210(A)(12) does not constitute an unconstitutional prior restraint on first amendment rights.

¶ 34 Appellants argue that, as applied by the department, A.R.S. § 4–210(A)(12) operates as a prior restraint to prohibit communication between Brazee and Mondavano on any matter involving the license. This argument, however, conflates the distinct protections of speech and association. Any restriction on association has the potential to inhibit expression between the persons whose association is prevented. Many restrictions on association are sustainable, however, as we note below. The limitation on appellants' business association does not amount to a prior restraint on their freedom of expression.

### V. Does A.R.S. § 4–210(A)(12) Prohibit the Right of Association for the Purpose of Engaging in Activities Protected by the First Amendment?

¶ 35 Appellants further press their argument that the department's order impacts Brazee's freedom of association, citing *Roberts v. United States Jaycees*, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984), for the proposition that one kind of freedom of association involves the right to associate for the purpose of engaging in activities protected by the first amendment such as speech, assembly, and the exercise of religion.

¶ 36 As the department points out, the right to free association is not absolute. *See United States v. Local 560 (I.B.T.)*, 974 F.2d 315, 345 (3rd Cir.1992); *see generally Rosario v. Rockefeller*, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973); *Lathrop v. Donohue*, 367 U.S. 820, 81 S.Ct. 1826, 6 L.Ed.2d 1191 (1961). A person's right of association may be curtailed if necessary to further a significant governmental interest like eliminating the public evils of crime, corruption, and racketeering. *See Brown v. Hotel and Restaurant Employees and Bartenders Int'l Union Local 54*, 468 U.S. 491, 508, 104 S.Ct. 3179, 82 L.Ed.2d 373 (1984).

¶ 37 States have the power under the twenty-first amendment to regulate the times, places, and manner under which liquor may be sold. *See Capital Cities Cable*, 467 U.S. at 716, 104 S.Ct. 2694. "The state's power to regulate the liquor industry is broader than its usual authority over public health, welfare and morals." *Mathis*, 146 Ariz. at 572, 707 P.2d at 976.

¶ 38 Given this broad authority over liquor licensing, the state has a significant interest in regulating commercial activity in the liquor industry, even if speech is involved. The state does not lose its power to regulate commercial activity deemed harmful to the public even when the course of illegal conduct is in part initiated, evidenced, or carried out by spoken, written, or printed language. *See Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978).

¶ 39 Moreover, business relationships do not fall within the fourteenth amendment's protection of intimate association. *See Kraft v. Jacka*, 872 F.2d 862, 871 (9th Cir.1989); *IDK, Inc. v. Clark County*, 836 F.2d 1185, 1193 (9th Cir.1988). Even a personal association that impacts regulated business dealings may lack such protection. In *Kraft*, the court held that the denial of a gaming license application, based partly on the applicant's personal association with an "unsuitable" person, did not violate the applicant's free association right. 872 F.2d at 872–73.

¶ 40 Here, the department has a significant interest in limiting the influence of convicted felons in liquor businesses when the background of a felon and current conduct indicate a "reasonable risk" of nonconformance with liquor and criminal laws. Thus, some infringement on the freedom of association is constitutional. Additionally, in this case the order does not prevent Brazee from continuing a personal relationship with Mondavano as long as he does not use that relationship to significantly influence or control the licensed business. Accordingly, we conclude that the statute does not interfere with Brazee's rights to free association.

## VI. Does A.R.S. § 4–210(A)(12) Treat Convicted Felons Who Are Employees Differently Than A.R.S. § 4–202(D) Treats Convicted Felons Who Apply for a Liquor License?

¶ 41 For their final issue, appellants argue that the department should not have used A.R.S. § 4–210(A)(12) to prevent 3613 Limited from employing Mondavano when Mondavano would not have been precluded from applying for and receiving a liquor license in his own name. They note that in April 1994 when the liquor board first granted 3613 Limited a license, more than five years had elapsed since Mondavano's felony convictions; thus, under A.R.S. § 4–202(D) he would not have been precluded from applying for a liquor license himself.

¶ 42 Section 4–202(D) provides that a liquor license may not be issued to or renewed for any person who has been convicted of a felony within five years prior to the application. This statute would not preclude Mondavano from applying for a license, but it also would not prohibit the department from considering that the applicant is a felon in deciding whether to grant the license. Presumably, in deciding whether to issue a liquor license to a convicted felon, the department would employ criteria similarly used in determining whether a convicted felon has an association with a licensee that implicates a "reasonable risk" of noncompliance with applicable laws. Indeed, the department notes that the board to which Mondavano provided false testimony in the A.R.S. § 4–210(A)(12) matter would also review any application for a liquor license he might file. Thus, the two statutes do not require that convicted felons be treated disparately; similar standards would serve in evaluating an alleged illegal association with a convicted felon and a felon's application for a liquor license.

## CONCLUSION

¶ 43 For the foregoing reasons, we affirm the trial court's affirmance of the liquor board's decision.

CONCURRING: JEFFERSON L. LANKFORD, Judge, and E.G. NOYES, JR., Judge.