[Civil No. 1913.   Filed January 4, 1922.]

[202 Pac. 806.]

## FERDINAND FISHBACK, as Administrator of the Estate of ARTHUR FISHBACK, Deceased, Appellant, v. E. J. FOSTER, Appellee.

1. LIVERY-STABLE AND GARAGE KEEPERS—GARAGE-KEEPERS HELD NOT ENTITLED TO LIEN FOR STORAGE UNDER STATUTE GIVING LIENS FOR REPAIRS.—Civil Code of 1913, paragraphs 3673, 3674, giving a person who has repaired any vehicle a lien thereon for such repairs, did not give garage-keeper a lien on automobile for storage charges.

2. LIENS—STATUTORY LIENS CANNOT BE EXTENDED.—Statutory liens cannot be extended by the courts to cases not provided for by the statute.

3. LIVERY-STABLE AND GARAGE KEEPERS—GARAGE-KEEPERS NOT ENTITLED TO LIEN ON AUTOMOBILE FOR STORAGE UNDER STATUTE RELATING TO "PROPRIETORS OF LIVERY AND PUBLIC STABLES"—"VEHICLE."—Civil Code of 1913, paragraph 3672, giving "proprietors of livery or public stables" a lien on "animals placed with them for feed, care and attention and also upon such carriages, buggies, vehicles or other equipment as may have been placed in their care for the amount of charges against the same," held not to give a garage-keeper a lien on automobile for storage charges, though automobile is included within the term "vehicle"; a garage-keeper not being a proprietor of livery or public stables within the statute.

4. BAILMENTS—GARAGE-KEEPER IS ENTITLED TO LIEN FOR REPAIRS ON AUTOMOBILE UNDER STATUTE PROVIDING FOR LIEN FOR REPAIRS ON "VEHICLE."—A garage-keeper has a lien on automobile for repairs under Civil Code of 1913, paragraph 3673, providing for liens for repairs on any "vehicle"; an automobile being a "vehicle."

5. LIVERY-STABLE AND GARAGE KEEPERS — NO COMMON-LAW LIEN ON AUTOMOBILE FOR STORAGE, UNLESS KEPT IN GARAGE STRICTLY FOR STORAGE WITHOUT AGREEMENT AS TO OWNER'S RIGHT TO CONTINUOUS USE.—Under Civil Code of 1913, paragraph 3687, keeper of garage in which automobile was kept did not have a common-law lien on such automobile for storage charges, unless it was left with the garage-keeper strictly for the purpose of storage without any agreement, either express or implied, that owner should have the

---

4. Right to lien on automobile for repairs or storage, notes, **Ann. Cas.** 1916A, 630; **L. R. A.** 1918D, 330.

right of its continuous use, since such lien is merely the right to detain the automobile until charges are paid, and is therefore dependent upon possession, and since the automobile is not in the possession of the garage-keeper if subject to the owner's control.

6. LIVERY-STABLE AND GARAGE KEEPERS—COMMON-LAW LIEN ON AUTO-MOBILE FOR STORAGE CHARGES NOT SUBJECT TO FORECLOSURE BY SALE.—Garage-keeper, with common-law lien on automobile for storage charges, had no right to foreclose lien by sale of car, since such lien is merely the right to retain possession until payment of charges.

7. LIVERY-STABLE AND GARAGE KEEPERS — LIEN ON AUTOMOBILE FOR STORAGE CHARGES CAN BE FORECLOSED BY SALE OF AUTOMOBILE WHEN CREATED BY AGREEMENT BETWEEN THE PARTIES.—Garage-keeper and automobile owner may by contract give garage-keeper a lien on the automobile for storage charges which can be fore-closed by sale of the automobile.

APPEAL from a judgment of the Superior Court of the County of Navajo. Andrew S. Gibbons, Judge. Judgment reversed, with directions.

Mr. Thorwald Larson, for Appellant.

Mr. Sidney Sapp and Mr. W. E. Ferguson, for Appellee.

McALISTER, J.—This is an action in replevin by Ferdinand Fishback, as administrator of the estate of Arthur Fishback, in which he seeks to recover from E. J. Foster, defendant, possession of an automobile, and from a judgment against him and a denial of his motion for a new trial he appeals.

A seven-passenger automobile, bearing Oklahoma license No. 84519 for the year 1918, was left for storage in the Jackson Garage at Holbrook, Arizona, in December, 1918, or January or February, 1919, and remained there until February 7, 1920. Harry Jackson was owner of the business carried on at this garage when the car was received, but C. H. Edmunds became its proprietor and the assignee of its accounts, including those for storage, on July 7, 1919, as a re-

sult of a deal between him and Jackson. The name of the owner of this car did not appear on the books of the garage, and Edmunds testified that he was unable to ascertain to whom it belonged, so he advertised in the "Holbrook Tribune" of the issues of January 16 and 23, 1920, that he would sell it at public auction on January 26, 1920, under and by virtue of sections 3673 and 3674, Revised Statutes of 1913, for the purpose of satisfying his lien thereon for a storage charge of $91 and costs of sale, describing it in the notice as one Oldsmobile automobile, owner unknown. The sale, however, did not occur that day, but was continued by public oral announcement in the presence of those attending to February the 7th following, when the car was sold to E. J. Foster, the highest bidder, for $133, a bill of sale being then and there executed and delivered. Appellee bases his ownership and right of possession upon the validity of this sale, while appellant contends that he was not divested of his title and right to possession thereby, because there is in Arizona no lien on an automobile for storage charges in favor of garagemen, and consequently all proceedings had in the foreclosure of one are void. Whether or not Edmunds, the garage-keeper, had, under the facts of this case, a lien covering his charge for storage, is the principal query presented by this appeal.

The ruling in favor of appellee could only have been based upon the theory that he did, but it does not appear from the findings, judgment, or any other portion of the record what kind of a lien—statutory, common law, or equitable—though according to the notice of sale, which included two other automobiles belonging to different persons, the foreclosure proceedings were had under and by virtue of sections 3673 and 3674, Revised Statutes of 1913, the former of which authorizes a person who has repaired with

labor or material, or both, any article, implement, utensil, or vehicle, to retain possession thereof until the amount due for such repairs is paid, while the latter section provides for a sale of the property retained for the purpose of satisfying the lien thus created. There was, however, no charge for repairs, but only for storage on the car in question; hence no lien could have arisen thereon under section 3673. But, notwithstanding the notice was that the lien created by section 3673 would be foreclosed, it is now claimed that a garageman's lien for storage attached under paragraph 3672 of the Revised Statutes of 1913, reading as follows:

"3672. Proprietors of livery or public stables, shall have a special lien on all animals placed with them for feed, care and attention, as also upon such carriages, buggies, vehicles or other equipments, as may have been placed in their care, for the amount of the charges against the same."

The authorities, however, seem to be agreed that a statute giving liverymen a lien for the care and keep of animals, or for keeping or storing vehicles, cannot be extended to include a lien on automobiles for storage charges. "The garage-keeper is like unto the livery-stable keeper, but he comes not within the language of the statute" (*Smith* v. *O'Brien,* 46 Misc. Rep. 325, 94 N. Y. Supp. 673), and "statutory liens cannot be extended by the courts to cases not provided for by the statute." 17 R. C. L. 600, par. 7. Berry on Automobiles, third edition, in paragraph 1317, states the rule thus:

"Statutes giving livery-stable keepers a lien for boarding or pasturing animals, or who in connection therewith keeps or stores vehicles, do not apply to garage-keepers. The livery-stable keeper had no lien at common law, so a garage-keeper must have a statute of his own if he is to have a lien."

To the same effect are the following: Babbitt on the Law Applied to Motor Vehicles, § 672; Huddy on Automobiles, § 881; *Smith* v. *O'Brien, supra.*

.It is true, however, as contended by appellee, that the term "vehicle" has been held to apply to automobiles, and properly so, but, even though a garage be a modern substitute for the livery-stable, to hold that the term "livery-stable keepers" includes garagemen would be contrary to the fact, and constitute judicial legislation, pure and simple. There is no question but that a garageman has, under section 3673, in his capacity as a "mechanic, artisan or other workman," a lien on an automobile (it being within the class designated "vehicles"), for his labor, material, or both furnished in its repair, but he must look to the legislature if he desires a statutory lien covering his charges for storage, because paragraph 3672 was enacted solely for the benefit of the liveryman, and the fact that he has been in large measure supplanted by the garageman would not justify the court in substituting the latter term for the words, "proprietors of livery or public stables," as they are used in paragraph 3672, or in reading it into this section along with them when it was not placed there by the legislature. From the horse-drawn carriage to the motor-driven car is a tremendous step forward in the evolution of transportation, and the conditions resulting from such progress necessarily produce new problems demanding new legislation, but it is the duty of the law-making and not of the judicial branch of the government to supply it.

But it is urged that the facts entitled Jackson and his assignee, Edmunds, to a common-law lien, since it is provided in paragraph 3687 of the Code that nothing in title 19, denominated "Liens," "shall in any manner affect or impair other liens arising at common law or in equity." A lien, being merely a right to de-

tain an article until certain charges respecting it are paid, is at common law dependent upon possession, and, according to the authorities cited above, a garage-keeper, like a livery-keeper, has none for his storage charges, because the automobile kept in the garage, like the animal or vehicle cared for in the livery-stable, is subject to the owner's control, and may be taken from the garage at his will. But the car in question remained in the garage from the time it was received there until it was sold to appellee, and it is argued in consequence that the garageman had continuous possession, which renders the common-law rule denying liverymen a lien inapplicable. Harry Jackson's testimony that it was received in his garage for storage, coupled with the fact that it was not taken out and used by its owner, Arthur Fishback, previous to his death in June, 1919, nor afterwards by the representative of his estate, or anyone else interested therein, indicates that there was neither an express nor implied agreement that the owner might have the use of it when he so desired. Under these conditions the common-law rule is stated in 28 Cyc. 44, to be as follows:

"If the vehicle is left with the garage-keeper strictly for the purpose of storage without any agreement, either expressed or implied, that the owner shall have the right of continuous use of the vehicle during such period, it seems that the garage-keeper may then have a warehouseman's lien thereon for his proper charges."

But even though it be true that a lien at common law in the nature of a warehouseman's lien did exist in favor of the garageman, it is of no avail to appellee, because such a lien confers only the right to retain possession as security for the debt; the right to sell in satisfaction thereof not being included. "Retention of possession is the full force of such lien,

and nothing more. To this extent alone it is enforceable, and this by suit at law." *Burrough* v. *Ely*, 54 W. Va. 118, 102 Am. St. Rep. 926, 46 S. E. 371. The same rule is thus stated in *Aldine Mfg. Co.* v. *Phillips,* 118 Mich. 162, 74 Am. St. Rep. 380, 42 L. R. A. 531, 76 N. W. 371:

"Indeed, in cases of common-law liens, which always involved possession of the chattel, actual or constructive (2 Kent's Commentaries, 639), the creditor had no right to sell the chattel for the purpose of obtaining compensation. The lien was defined to be 'the right of detention, in persons who have bestowed labor upon an article, or done some act in reference to it, and who have the right of detention till reimbursed for their expenditures and labor.' *Oakes* v. *Moore,* 24 Me. 219, 41 Am. Dec. 379. As said by Chancellor KENT: 'A lien is, in many cases, like a distress at common law, and gives the party detaining the chattel the right to hold it as a pledge or security for the debt, but not to sell it.' . . . 2 Kent's Commentaries, 642, and cases cited. See, also, 1 Jones on Liens, Section 335, where the author, in discussing a carrier's lien, says that it, 'like all other common-law liens founded upon possession, gives him [the holder] no right to sell the property, but only a right to retain it until his charges are paid.' Again, in section 1033 the learned author says that 'a common-law lien . . . is merely the right of a person in possession of the property of another to detain it until certain demands . . . are satisfied.''

Hence appellee's title to the car, in so far as it is based upon the common-law lien of the garageman, cannot be upheld.

It is unnecessary to discuss the existence of an equitable lien, since the facts do not disclose one, and appellee's claim is not founded upon this theory, but upon the contention that Edmunds had either a statutory or common-law lien. The fact that a lien which can be foreclosed by a sale of the property did not

exist in this case does not mean that the parties themselves could not have created one by contract or agreement when the car was received for storage, nor that the garageman could not have proceeded by filing suit and attaching the car, as in the case of any other absent defaulting debtor having property subject to attachment within the jurisdiction of the court. The fact that the car was carried on the books of the garage by Harry Jackson as the property of Arthur Fishback was sufficient to charge Edmunds, the assignee of Jackson, with knowledge of the ownership of the car, and, besides this, the car had been attached twice in other cases as the property of Arthur Fishback while in the garage.

The judgment of the lower court is reversed, with directions that judgment be entered for appellant.

ROSS, C. J., and FLANIGAN, J., concur.