707 P.2d 974

Patricia MATHIS, Virginia Gray, and Betty Jarrell, Trustees of the Charles and Ella Gould Trust; Arthur V. Helfenbein; and Ox-Bow Inc., an Arizona corporation, Plaintiffs-Appellees,

v.

LIQUOR BOARD, State of Arizona, and Department of Liquor License and Control; L.H. Robertson, Superintendent of the Department of Liquor Licenses and Control and Authorized Delegate To the Arizona State Liquor Board, Defendants-Appellants.

No. 1 CA–CIV 7155.

Court of Appeals of Arizona,
Division 1, Department D.

Aug. 13, 1985.
Reconsideration Denied Sept. 23, 1985.

Burch & Cracchiolo, P.A. by Jack Daniel Klausner, Catherine Conner and C. Edwin Thurston, Phoenix, for plaintiffs-appellees.

Robert K. Corbin, Atty. Gen. by John A. Muirhead, Asst. Atty. Gen., Phoenix, for defendants-appellants.

## OPINION

GRANT, Judge.

This is an appeal from an order of the superior court lifting the suspension and restriction of the transfer of a liquor license imposed by the Arizona State Liquor Board.

In November, 1979, a series 6 liquor license, No. 06L04015, previously held by Patricia Mathis, Virginia Gray and Betty Jarrell as trustees of the Charles and Ella Gould trust and by Arthur V. Helfenbein (the sellers) was transferred to Thomas W. Walsh.[1] The transfer was part of Walsh's purchase of the Oxbow Inn in Payson, Arizona in August, 1979. The sellers perfected their security interests in the property.

On July 31, 1980 new legislation concerning revocation and suspension of liquor licenses went into effect. A.R.S. § 4–210 provided that

> A. The [state liquor] board may suspend, revoke, refuse to renew and the superintendent may suspend any license ... for any of the following reasons:
>
>      \*     \*     \*     \*     \*     \*
>
>     5. The licensed business is delinquent for more than one hundred

---

1. Donald R. Hakanson appears to be another purchaser of the Inn. The parties treat Walsh as the main actor in these events; this opinion follows the parties' approach.

twenty days in the payment of the taxes to the state or any political subdivision of the state.

\* \* \* \* \* \*

B. The board may refuse to transfer any license against which a complaint has been filed alleging a violation of any of the grounds set forth in subsection A until such time as said complaint has been finally adjudicated.

(Subsection 5 was amended by Laws 1984, Chap. 322 § 17 to provide for a ninety day delinquency period.)

The Arizona Department of Revenue filed a complaint on August 27, 1981 with the Liquor Department against Walsh for delinquent taxes and perfected tax liens against Walsh's property and the license. The Liquor Department issued a citation to show cause why the license should not be suspended or revoked. Walsh made an arrangement for payment of the taxes with the Department of Revenue and the complaint was withdrawn. However, Walsh breached the agreement. The Department of Revenue filed a second complaint on May 12, 1982 against Walsh seeking $16,757.60 in delinquent transaction privilege taxes and education excise (sales) taxes. The Liquor Department's citation was issued on May 26, 1982 against Walsh and Ox Bow Inn.

Walsh also had defaulted in his obligations to the sellers. In September 1981, the Sellers filed suit in Gila County against Walsh to foreclose their security interests, including the interest in the liquor license. The suit named the Department of Revenue as an additional defendant because of the perfected tax liens against Walsh's property. The sellers received judgment in their favor on May 24, 1982, two days prior to the second citation from the Liquor Department. The judgment foreclosed all of Walsh's right, title and interest in the property and license, and foreclosed the liens of the Department of Revenue, which were junior to the sellers' liens. A.R.S. § 42–1824. The sellers repurchased the Oxbow Inn property and liquor license at the sheriff's execution sale. They then sold the property and license to appellees Oxbow Inn, Inc., an Arizona corporation.

The liquor board conducted a hearing on August 5, 1982 to determine what action should be taken on the license. The board ordered suspension of the license and stayed the transfer of the license until the taxes were paid. The order was affirmed upon motion for rehearing and reconsideration. Thus, Walsh remained the named licensee even though his ownership interests reverted to third parties. The sellers and Oxbow Inn, Inc., timely appealed by filing a complaint against the state liquor control authorities (state). A.R.S. § 4–211 and A.R.S. §§ 12–901—12–914, the Administrative Review Act.

The trial court granted summary judgment for sellers and denied the state's motion for summary judgment. The trial court ordered a lifting of the Liquor Board's stay on transfer and of the suspension of the license without stating its basis for reversal of the board's decision. The court also awarded attorneys' fees and costs to the sellers. The state filed a timely notice of appeal.

The issues in this appeal are: (1) whether A.R.S. § 4–210(A)(5) limits the Liquor Board's sanctioning power to the licensed business which incurred delinquent taxes; (2) whether the Department of Revenue's foreclosed junior tax liens preclude sanctions against a liquor license; (3) whether the liquor board's sanctions were arbitrary, capricious or involved an abuse of discretion in violation of due process.

■ According to *Nunnally v. Moore*, 116 Ariz. 508, 509, 570 P.2d 195, 196 (App. 1977), "[a]lthough a liquor license is a property right between the licensee and third parties, as between the licensee and the State, the license is merely a privilege subject to the State's police power." The state's power to regulate the liquor industry is broader than its usual authority over public health, welfare and morals. *Arizona State Liquor Board v. Poulos*, 112 Ariz. 119, 538 P.2d 393 (1975). Pursuant to that authority, the legislature has pre-

scribed by statute certain standards of behavior that a licensee must meet to retain use of his license. A.R.S. § 4-210(A). *See Clark v. Tinnin,* 81 Ariz. 259, 304 P.2d 947 (1956).

A licensee is entitled to due process before a license can be suspended or revoked. *Nunnally v. Moore.* Anyone who has a legal or equitable interest in a liquor license properly filed with the Department of Liquor Licenses and Control is entitled to notice of proceedings on the license and the right to appear before the board. A.R.S. § 4-112; Ariz.Admin.Comp. R 4-15-239 (formerly Ariz.Admin.Comp. R4-15-58); *Nunnally v. Moore.*

### SANCTIONING POWER UNDER A.R.S. § 4-210

The parties' primary dispute concerns the proper use of sanctioning powers under A.R.S. § 4-210. While they agree that the liquor board has the authority to impose sanctions for delinquent taxes, they disagree over what the legal target of the sanctions may be. The sellers argue that only the licensed business which incurred the tax may suffer sanctions for tax delinquency. If sellers are correct then the Board's action was illegal. The state emphasizes that the statute provides for action against "any license" and is not limited to sanctions against the business incurring the taxes. Thus, according to the state, the Liquor Board's action was legal.

We agree with the state's analysis of the Liquor Board's powers. We believe that A.R.S. § 4-210 has four functions. It defines the sanctions which may be imposed against a liquor license, it authorizes transfer restrictions if there are complaints against a license, it prescribes the procedure for hearing complaints, and it specifies the grounds for sanctions and complaints. The statute targets the license for sanctions rather than the licensee or licensed business whose conduct furnished the grounds for sanctions.

To adopt the sellers' analysis of the sanctioning scheme, we would have to infer a limitation that sanctions against the license are permissible only if third parties who did not engage in sanctionable activities, in this instance nonpayment of taxes, are not affected by the sanctions. We decline to construe the statute with this inference because the statute is unambiguous. Where statutory language is unambiguous, that language must ordinarily be regarded as conclusive absent any clearly expressed legislative intent to the contrary. *State ex rel. Corbin v. Pickrell,* 136 Ariz. 589, 667 P.2d 1304 (1983). The Liquor Board was authorized to impose the sanctions it did.

The requirement that tax payments by the licensed business must be kept current could not have surprised the sellers. Former A.R.S. § 4-210(A) and (C) (repealed by Laws 1980, Chap. 207 § 1) provided that "violation of, or noncompliance with, any provision of this title or any rule or regulation issued pursuant to this title, or any condition imposed upon the licensee by the license" was possible grounds for sanctions against a license. In the first Official Compilation of Administrative Rules and Regulations for Arizona (1975), R4-15-02 provided:

> **Delinquent Taxes.** The Board may suspend or revoke a spirituous liquor license when it appears, after a hearing before the Board, that a municipal license, when required, or a state privilege sales tax license has not been obtained or kept in current status.

(Renumbered without change as R4-15-102, effective October 8, 1982, repealed effective July 11, 1983.) This regulation was in effect even prior to the transfer to Walsh. The sellers, as licensees themselves, were on notice that tax delinquencies could affect a liquor license.

We recognize that the Liquor Board might not remove the sanctions until the taxes are paid, if not by Walsh then by someone else. This result is a legal function of the sanctioning scheme. A.R.S. § 4-210 provides that delinquent taxes related to the licensed business may cause sanctions against a license. The sanctions may include suspension and restriction on

transfer. A.R.S. § 4–210(A). Someone who has an interest in a license is on notice that to free a license of sanctions, the tax obligation must be paid. If a licensee fails to pay it, another person may have to do so to protect an interest in the license. There is nothing inherently improper in one party with an interest in property being subject to liability for taxes incurred by another party with an interest in the property. *See Levy v. Arizona State Liquor Board,* 132 Ariz. 1, 643 P.2d 704 (1982).

## FORECLOSED TAX LIENS AS BASES FOR SANCTIONS

The sellers also seek affirmance of the trial court's decision on the theory that foreclosed junior tax liens are an invalid basis for imposing sanctions against a liquor license. They argue that A.R.S. § 4–210(A)(5) is a taxing statute and must be read together with the tax lien statutes, A.R.S. § 42–1821 to § 42–1825. The sellers point out that A.R.S. § 42–1824(B) limits the priority of a tax lien:

> This subsection [sic] does not give this state a preference over any recorded lien which was recorded prior to the time the department recorded a notice of lien pursuant to § 42–1822.

Thus, conclude the sellers, § 42–1824 is a limitation on § 4–210 which prohibits use of foreclosed tax liens for sanctions. They consider the Department of Revenue's complaint to the Liquor Board as an attempt to obtain indirectly something it could not obtain directly, a preference over the sellers' senior liens.

■ A.R.S. § 4–210, however, is not a taxing statute; it is proper regulation of liquor sales. One of its effects is to encourage a seller to turn over a license only to a responsible purchaser to ensure the purchaser's acts or omissions do not jeopardize the seller's security interests. *E.g., Nunnally v. Moore.* Conduct which might affect a seller's interests through sanctions imposed on a license include repeated acts of violence on the establishment premises, the felony conviction of a licensee, and drunkenness by the licensee on the premises. Inclusion of the delinquent tax provision does not render A.R.S. § 4–210 a tax statute. Because § 4–210 is a proper exercise of regulatory power and not a taxing statute, the trial court is reversed and the Liquor Board's decision is affirmed.

■ The result here is supported by another reason. A.R.S. § 4–210(A)(5) applies to a delinquent tax obligation, which is not to be confused with a lien it may give rise to. A lien is a method to secure payment of an obligation and is distinct from the obligation it secures. *See Matlow v. Matlow,* 89 Ariz. 293, 361 P.2d 648 (1961). An obligation to pay taxes is not relieved because there could be no further tax liens on the property. *See Levy v. Arizona Department of Economic Security.* Walsh's tax obligations were delinquent, as the parties have admitted. Extinguishing the liens did not extinguish the tax obligation. The delinquent obligation was a legitimate basis for sanctions.

## VIOLATION OF DUE PROCESS

■ The sellers maintain that they were deprived of due process at the August suspension hearing through arbitrariness, capriciousness, illegality or abuse of discretion by the Board. The allegation is based on one statement by a Board member. The member asked the assistant attorney general, after the sellers' attorneys' initial presentations, to clarify the state's position because he was "completely lost with this legalized business." The assistant attorney general then made his presentation and a discussion of the issues followed.

In determining whether there has been a violation of due process through abuse of discretion by arbitrariness or capriciousness, this court reviews the record to see if there has been

> unreasoning action, without consideration and in disregard for facts and cir-

cumstances; where there is room for two opinions, the action is not arbitrary or capricious if exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached.

*Petras v. Arizona State Liquor Board,* 129 Ariz. 449, 452, 631 P.2d 1107, 1110 (App.1981) quoting *Tucson Public Schools, District No. 1 of Pima County v. Green,* 17 Ariz.App. 91, 495 P.2d 861 (1972).

We find no such abuse here. The Liquor Board member's request for clarification early in the hearing cannot be construed as making his later vote against the sellers unreasoning and without consideration. This admission demonstrates the opposite: he wanted clarification so he could better understand the issues. Further, the member's confessed lack of knowlege in an area of the law did not taint the whole proceeding with abuse of discretion. The sellers received a full hearing before the Liquor Board, the Board rendered a legal decision within its discretion, and the sellers therefore received due process.

■ The question of whether A.R.S. § 4–210 unconstitutionally impairs the sellers' contract rights in the license, an issue urged by sellers in the lower court and addressed by the Department in its opening brief, was not pursued by the sellers in their brief and will not be considered in this appeal. The sellers raised for the first time on appeal an alleged conflict of interest by the assistant attorney general arising from his obligations to the state agencies involved here. This issue will also not be considered.

The Liquor Board's decision to restrict or suspend the license for taxes incurred by the licensed business was proper. The judgment of the trial court is reversed. The sellers' motion for award of attorney's fees on appeal is denied.

MEYERSON, P.J., and HAIRE, J., concur.