In re TERWILLIGER'S CATERING PLUS, INC., Debtor.

E. Hanlin BAVELY, Trustee, Plaintiff,

v.

STATE of Ohio, DEPARTMENT OF LIQUOR CONTROL, and State of Ohio, Department of Taxation, and Department of the Treasury, Internal Revenue Service, Defendants.

Bankruptcy No. 1–87–02314.
Adv. No. 1–87–0169.

United States Bankruptcy Court, S.D. Ohio, W.D.

June 2, 1988.

Robert A. Goering, Cincinnati, Ohio, for debtor.

E. Hanlin Bavely, Cincinnati, Ohio, trustee.

Chester T. Lyman, Jr., Asst. Atty. Gen., Columbus, Ohio.

Ronald T. Jordan, Office of District Counsel, Cincinnati, Ohio.

DECISION

BURTON PERLMAN, Chief Judge.

This matter involves the determination of the rights to proceeds upon the transfer of a liquor license by a Chapter 7 trustee. It is essentially a contest between the State of Ohio, Department of Liquor Control and Department of Taxation (State) and the Internal Revenue Service (IRS), the trustee no longer having an interest in the fund.

The debtor, holder of a liquor license, filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code on July 8, 1987. The trustee filed a complaint to sell the liquor license free and clear of liens, naming the appropriate State authorities and also IRS defendants. The trustee sought a preliminary injunction to prevent the State from suspending or otherwise interfering with the sale, and to require the State to undertake and complete the transfer of the liquor license. The trustee and the defendants then agreed that the liquor license could be sold free and clear of liens, and that any liens claimed against the license

by the defendants would attach to the proceeds of the sale. The court granted the trustee's application to sell the liquor license to Bernhard Schiefer. Before us now is the question of disposition of the proceeds of the sale.*

The State and IRS have stipulated that the debtor's bankruptcy estate included a D-1, D-2, D-3 and D-6 liquor license issued by the State of Ohio Department of Liquor Control for the period between October 1, 1986 through October 1, 1987, subject to renewal beginning September 1, 1987 at a renewal fee of $838.00. They also stipulated that pursuant to an agreement between the trustee and the State, the license was renewed effective from October 1, 1987 through October 1, 1988 and that the trustee was given authority to sell the liquor license for a total price of $8,921.80 ($921.80 representing the cost of renewal and late penalty). The defendants agreed that the IRS has valid claims against the debtor for pre-petition liabilities for income tax withholding, FICA taxes, FUTA taxes, and interest and penalties in the amount of $36,178.55 which are secured by all of the property of the debtor, while the State has valid claims against the debtor for pre-petition sales taxes, owing by the licensed enterprise, in the amount of $13,866.43. The defendants say that the sole issue for determination is whether the IRS or the State is entitled to the proceeds of the sale of the liquor license.

The State argues two positions. First, the State says that the liquor license cannot be considered part of the estate of the debtor as the debtor has no legal or equitable interest in the liquor license, for it is just a license or privilege. That being the case, says the State, IRS can have no valid lien on the liquor license. The fund resulting upon transfer of the license, then, should come to the State pursuant to the Ohio statute.

The State's second position is that the bankruptcy estate takes a state issued license, such as the liquor license here, subject to the restrictions imposed by the issuer of the license. Under ORC § 4303.26(B)(1), the Department of Liquor Control may not transfer ownership of a liquor permit until tax returns known to be delinquent are filed and any tax delinquency is resolved. "Resolved", as defined by the statute, means that the tax delinquency has been paid or an amount sufficient to satisfy the delinquency is in escrow for the benefit of the State. Therefore, the State argues that the claims of creditors, including that of secured creditor IRS, would only apply after the requirements of State law are met.

The IRS, for its part, argues that by virtue of its federal tax lien, notice of which was filed prior to the commencement of the bankruptcy proceeding, it has a secured interest in the amount of $36,179.05 in the property of the debtor, and this includes debtor's liquor license and the proceeds of its sale. IRS says that the State is limited to the rights of one having a priority claim under 11 U.S.C. § 507(a)(7) so far as its unpaid state sales taxes are concerned. IRS contends that ORC § 4303.26(B)(1) is nothing more than a tax collection statute and does not create a lien in favor of the State.

The relevant Ohio statute says:

**ORC § 4303.26 Application for permits.**

\*     \*     \*     \*     \*     \*

(B)(1) When an application for transfer of ownership of a permit is filed with the department, the department shall give notice of the application to the department of taxation. Within twenty days after receiving this notification, the department of taxation shall notify the department of liquor control and the proposed transferee of the permit if the permit holder owes any delinquent sales

---

* Though the language of the agreement is to allow the sale of the liquor license free and clear of liens, we will treat the question as a broader one. Thus, the question will be viewed as whether the State has a right on any basis to the fund resulting from the sale, superior to that of IRS. This approach is only fair considering the cooperativeness with the bankruptcy process displayed by the State in agreeing to permit the sale to proceed without awaiting the outcome herein.

taxes to this state or has failed to file any sales tax returns, to the extent that such delinquent taxes and delinquent returns are known to the department of taxation at that time. The department of liquor control shall not transfer ownership of the permit until returns known to be delinquent are filed and until any such tax delinquency is resolved. As used in this division, "resolved" means that the tax delinquency has been paid or an amount sufficient to satisfy the delinquency is in escrow for the benefit of the state. The department of taxation shall notify the department of liquor control of the resolution. After the department of liquor control has received such notification from the department of taxation, the department of liquor control may proceed to transfer ownership of the permit. Nothing in this division shall be construed to affect or limit the responsibilities or liabilities of the transferor or the transferee imposed by Chapter 5739. of the Revised Code.

\* \* \* \* \* \*

Thus, the law of the State of Ohio provides that ownership of a liquor license may not be transferred until any sales tax delinquency on the part of the original owner has been paid. This Ohio statute comes into play because at the time of the filing of this bankruptcy case, debtor held an Ohio liquor license. The debtor then also was liable to the State of Ohio for delinquent pre-petition sales taxes.

We have reached the conclusion in this proceeding in favor of IRS. We find it necessary first to deal with the question of whether an Ohio liquor license is property within the meaning of 11 U.S.C. § 541. It is the law in the Sixth Circuit that an Ohio liquor license is something more than a mere license which can have no attribute of property. In *Paramount Finance Company v. United States*, 379 F.2d 543 (6th Cir.1967), the court found that one could "transfer to the lender a security interest in the liquor license, as constituting 'property' with unique value." *Id.* at 545. This holding leads inevitably to the conclusion that the liquor license here in question,

upon the filing of the bankruptcy petition, became property of the bankruptcy estate within the intendment of 11 U.S.C. § 541. *Accord, In re Mason,* 18 B.R. 817 (Bankr. W.D.Tenn.1982); *In re Hoffman,* 65 B.R. 985 (Bankr.D.R.I.1986).

Though not expressly stated, it is the position of the State, because it urges upon us *In re Farmers Markets, Inc.,* 792 F.2d 1400 (9th Cir.1986), that the liquor license in its unmodified form does not enter the bankruptcy estate, but only so much of its value as remains after delinquent sales taxes are assessed, enters the estate. This is a flawed view when one takes into consideration the state of affairs at the moment of the filing of the bankruptcy petition in this case. At that point, debtor was operating premises where liquor was sold, and held a liquor license for that purpose, and upon the filing, debtor's interest in the liquor license entered the bankruptcy estate. With respect to sales taxes, at the time of the filing of the bankruptcy petition, debtor was delinquent in its payment of them. There was not pending at the time of the filing, any transaction for the transfer of the liquor license. At that point, with regard to the delinquent sales taxes, the State owned only a claim against debtor. *See,* 11 U.S.C. § 101(4)(A); *Ohio v. Kovacs,* 469 U.S. 274, 280, 105 S.Ct. 705, 708, 83 L.Ed.2d 649 (1985). Thus, at the time of filing of the bankruptcy petition, ORC § 4303.26(B)(1) was inactive. It was only when the trustee in bankruptcy sought to liquidate the liquor license that the State statute by its terms was activated. The State then, by resort to that statute, sought to satisfy the claim which it held on account of delinquent sales taxes.

But this brought into play another provision of the Bankruptcy Code which provides:

**11 USC § 362. Automatic stay**

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employ-

ment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or·could have been commenced before the commencement of the case under this title ... or to recover a claim against the debtor that arose before the commencement of the case under this title ...;

\* \* \* \* \* \*

By the terms of the automatic stay provision of the Bankruptcy Code, the State is enjoined, so long as the stay remains in place, from collecting its pre-petition claim. We are of the view that it is not possible logically to distinguish a direct suit to collect pre-petition sales taxes owed to the State from an effort to accomplish the same result by application of ORC § 4303.26. We are in agreement with the Court in *In re Aegean Fare, Inc.,* 35 B.R. 923, 928 (Bankr.Mass.1983), where that court said that such activity amounted to an attempt to do "indirectly that which the [State of Ohio] is prohibited from doing directly." We hold, therefore, that 11 U.S.C. § 362(a)(1) directly enjoins the operation of ORC § 4303.26. Further, we hold that this conclusion resolves the present controversy.

At first glance, one might think otherwise, for all that § 362 does is enjoin action; it does not determine rights. In order to justify our conclusion, then, we must look further to see whether any rights are slighted by our conclusion. At § 362(d), terms and conditions are prescribed whereby the automatic stay of the Bankruptcy Code may be modified. For present purposes, what is there provided is relevant to the extent that one must consider what cause, under § 362(d)(1), could be shown to warrant removal of the automatic stay so that the State might assert a preeminent right to the fund resulting upon sale of the liquor license by the trustee. We are unable to envision any cause which the State might show which would warrant modification of the automatic stay. This follows from the fact that the Bankruptcy Code itself prescribes the rights of a creditor such as the State.

That the State was a creditor is clear from 11 U.S.C. § 101(9) for, as we have seen, it held a pre-petition claim against the debtor at the time of filing. The State had the right, as a creditor, to participate in any distribution made by the trustee by the filing of a proof of claim pursuant to 11 U.S.C. § 501, and this the State has done. A claimant such as the State is given a preferred status as a creditor pursuant to 11 U.S.C. § 507(a)(7), in the event that funds become available for distribution by the trustee. In view of these contemplations of the Bankruptcy Code for the treatment of a creditor such as the State, we are left with no doubt that the State would be unsuccessful in securing relief from the automatic stay of § 362.

Indeed, the removal of the automatic stay for the purpose of permitting the State to allow operation of ORC § 4303.26 would directly contravene those sections of the Bankruptcy Code to which we have made reference, for the conclusion is simply unavoidable that that statutory provision directly conflicts with those provisions of the Bankruptcy Code. Where that is the case, the State statute must yield because of the supremacy clause, Article VI of the United States Constitution.

We thus reach a conclusion on the issues here presented in favor of IRS. *See, In re Hoffman,* 65 B.R. 985 (D.R.I.1986); *In re Aegean Fare, Inc.,* 35 B.R. 923, 928 (Bankr.Mass.1983).

## JUDGMENT ON DECISION BY THE COURT

This proceeding, having been submitted by the interested parties to the court, Honorable Burton Perlman presiding, and the issues having been duly considered and a decision having been rendered,

It is Ordered and Adjudged that funds in the hands of the trustee as a result of his transfer of debtor's liquor license shall be distributed to the Internal Revenue Service, its rights thereto having been held to be superior to those of the State of Ohio.