**In re A.J. BAYLESS MARKETS, INC., Debtor.**

**CITY OF PHOENIX, Plaintiff,**

v.

**A.J. BAYLESS MARKETS, INC., Defendant.**

**Bankruptcy No. 4–88–1515 PHX RGM.**

United States Bankruptcy Court, D. Arizona.

Nov. 20, 1989.

James H. Hays, Office of the City Atty. and Roderick G. McDougall, City Atty., Phoenix, Ariz., for City of Phoenix.

James J. Belanger, Lewis & Roca, Phoenix, Ariz., for debtor.

Sally S. Neely, Sidley & Austin, Los Angeles, Cal., for Citicorp North America and Citibank N.A.

Michael W. Carmel, Phoenix, Ariz., for unsecured creditors committee.

Virginia O'Malley, Phoenix, Ariz., for Citibank.

## AMENDED MEMORANDUM OF DECISION

LESLIE TCHAIKOVSKY, Bankruptcy Judge.

The City of Phoenix, Arizona (the "City") seeks payment of $20,791.78 (the "Sequestered Funds") in proceeds from the sale of Debtor's liquor licenses (the "Liquor Licenses") in satisfaction of pre-petition sales tax (the "sales tax debt"). For the reasons set forth below, the Court finds for the City and orders the Debtor to turn over the Sequestered Funds to the City.

### SUMMARY OF FACTS

Prior to the commencement of this chapter 11 case on February 29, 1988, the Debtor operated food markets in Phoenix, Arizona. The Debtor sold liquor at its food markets under the authority of liquor licenses issued by the State of Arizona (the "State"). The Debtor incurred sales tax payable to the City from the sale of food, liquor, and other items at its food markets. On the petition date, Bayless owed the City a total of $20,791.78 in sales tax which was then less than 90 days past due.

On November 21, 1988, at a time when the sales tax debt was more than 90 days past due, the City notified the Department of Liquor Licenses and Control (the "Department") of the delinquency. As permitted by state law but without obtaining relief from the automatic stay, the Department filed administrative complaints to revoke the Liquor Licenses.[1] Thereafter, the Department dismissed four of the complaints, held the fifth in abeyance, and sought relief from the automatic stay. At about the same time, the Debtor sought leave to sell the Liquor Licenses. The City opposed the proposed sale unless the sales tax debt was paid in full. The City represented that the Department exercised its right under A.R.S. § 4–210 to refuse to transfer the Liquor Licenses unless the sales tax debt were paid and that that right was enforceable in bankruptcy.[2] The Bankruptcy Judge in charge of the case, the Honorable Robert Mooreman, took the

---

1. Section 4–210(A)5 of the Arizona Revised Statutes provides that:

    A. The board or the superintendent may suspend, revoke or refuse to renew any license issued pursuant to this chapter for any of the following reasons:

    . . . . .

    5. The licensed business is delinquent for more than ninety days in the payment of taxes to the state or to any political subdivision of the state.

2. Section 4–210(D) of the Arizona Revised Statutes provides that:

    The board or superintendent may refuse to transfer any license or issue a new license at the same location if the superintendent has filed a complaint against the license or location which has not been resolved alleging a violation of any of the grounds set forth in subsection A of this section until such time as said complaint has been finally adjudicated.

City's motion for relief under submission and authorized the sale free and clear of the City's claims over the City's opposition, ordering the City's claims transferred to the Sequestered Funds.

Further hearing was held on the City's motion and the matter was submitted for decision to the undersigned Bankruptcy Judge, sitting for Judge Mooreman. This Court must now determine whether the City's claim to the Sequestered Funds is superior to the claim of the estate or whether the Sequestered Funds should be released to the estate and the City's claim relegated to the status of an unsecured priority claim. The Debtor's secured creditors, who claim a security interest in the Sequestered Funds, join with the Debtor in opposing the City's claim.

## DISCUSSION

The City contends that it has a property interest in the Liquor Licenses under A.R.S. § 4–210 and that that property interest entitles it to payment of the Sequestered Funds in preference to the bankruptcy estate. The Debtor raises several arguments in opposition to this contention. Several of these arguments, the Court views as subsidiary: (1) that a post-petition borrowing order gave the post-petition lender an interest in the Liquor Licenses senior to any claim by the City under state law, (2) that the City's claim could only be enforced with respect to taxes arising from the sale of liquor, and (3) that only claims by the governmental agency that issues the license—in this instance, the State—can take precedence over the estate's claim to the Sequestered Funds. The Debtor's principal arguments are: (1) that Arizona law does not give the City a property interest in the Liquor Licenses, (2) that, if Arizona law does give the City a property interest in the Liquor Licenses, its interest is a statutory lien avoidable under 11 U.S.C. § 545(2), and (3) that, even if Arizona law does give the City a property interest in the Liquor Licenses which is not avoidable under 11 U.S.C. § 545(2), Arizona law is in conflict with and preempted by Section 507 of the Bankruptcy Code. The Court will address the Debtor's subsidiary arguments briefly before focussing on the Debtor's more difficult principal arguments.

## A. SUBSIDIARY ARGUMENTS

The Debtor conceded at oral argument that its first subsidiary theory—that the City's interest in the Liquor Licenses was subordinated to the post-petition lender's security interest pursuant to a Court-approved borrowing order—was untenable. The Court thinks that this concession was wise.

The Debtor's second subsidiary argument should also have been withdrawn. The Debtor argues that the law in the Ninth Circuit is that the only condition on the transfer of a liquor license that survives in bankruptcy is the payment of claims arising directly from the sale of liquor. This argument is based on certain language found in *In re Anchorage International Inn, Inc.*, 718 F.2d 1446 (9th Cir. 1983). In *Anchorage*, the Court found that the statute in question limited the claims to be paid to those arising from the licensed business and remanded the case to the lower court for a determination of the amount of those claims. *In re Anchorage International Inn, Inc.*, 718 F.2d at 1452. Clearly, the Court in *Anchorage* was construing a limitation in the Alaska statute, not announcing a principle of federal law. Furthermore, the limitation in question was to claims arising from the licensed business, not claims directly related to the sale of liquor. In the instant case, the licensed businesses were food marts with liquor concessions. Thus, the entire sales tax debt arose from the licensed businesses.

■ Although slightly more substantial, the Debtor's third argument does not withstand scrutiny. The Debtor contends that, to survive in bankruptcy, the claims to be paid as a condition of the transfer must be owed to the same governmental agency that issued the license. For this argument, the Debtor relies on dicta in *Max Sobel Wholesale Liquors v. Nolden (In re Leslie)*, 520 F.2d 761, 763 (9th Cir.1975). In *In re Leslie*, the Court refused to enforce in bankruptcy a California statute which gave

certain private creditors a priority in payment from the sale proceeds of a liquor license and related business assets. The Court distinguished *United States v. California*, 281 F.2d 726 (9th Cir.1960), in which the transfer of a license was conditioned on payment of claims to the State, by noting, among other things, that the condition in the statute involved in its case did not seek to benefit the State, but rather a private group of creditors. *In re Leslie, supra* at 763.

The Debtor's reliance on *In re Leslie* is misplaced. First, even if the controlling law were that restrictions on the transfer of a liquor license are enforceable in bankruptcy only to the extent that they benefit the body issuing the license, that requirement would be satisfied under the circumstances of this case. The City is a political subdivision of the State. It cannot seriously be argued that the State is not benefitted when its political subdivision receives payment of its taxes. Moreover, the law in the Ninth Circuit is not so circumscribed. In *Anchorage International Inn, supra*, the Court expressly upheld a state law conditioning the transfer of a liquor license on the payment of private claims.

The Debtor contends that the Court in *Anchorage International Inn* did not pay proper heed to the distinction between public and private claims. This Court does not agree. The Court in *Anchorage International Inn* properly noted the principal distinction between the Alaska statute and the California statute denied enforcement in *Leslie:* that the latter statute permitted the sale of the license, even though the claims in question could not be paid in full, and then purported to establish a priority for a certain class of claims with respect to the sale proceeds. By contrast, like the Arizona statute addressed here, the Alaska statute upheld in *Anchorage International Inn* prohibited the transfer of the license unless the claims specified could be paid in full. *Anchorage International Inn, supra* at 1450. A Court might reasonably view the California statute addressed in *In re Leslie* as establishing a priority scheme in conflict with the Bankruptcy Code while viewing the Alaska stat-

ute as merely defining the nature of the licensee's property interest in the license.

## B. PRINCIPAL ARGUMENTS

The City contends that A.R.S. § 4–210(D) gives it a property interest in the Liquor Licenses which is enforceable in bankruptcy. The Debtor contends that A.R.S. § 4–210(D) does not give the City a property interest in the Liquor Licenses or that, if it does, that interest is a statutory lien avoidable under 11 U.S.C. § 545(2) under the circumstances of this case. Finally, the Debtor contends that to enforce A.R.S. § 4–210(D) in a bankruptcy case would violate the Supremacy Clause by permitting the State to establish a priority scheme inconsistent with that established by the Bankruptcy Code.

**Existing Law.** The Debtor acknowledges that, unless Arizona law or the facts of this case provide a basis for distinction, there is clear authority in the Ninth Circuit that such restrictions on the transfer of liquor licenses are enforceable in bankruptcy and do not violate the Supremacy Clause. Cf., *In re Farmers Markets, Inc.*, 792 F.2d 1400 (9th Cir.1986) and *In re Anchorage International Inn, Inc., supra*, holding such restrictions to be enforceable under the Bankruptcy Code, and *Sulmeyer v. California Department of Employment Development (In re Professional Bar Co.)*, 537 F.2d 339 (9th Cir. 1976); *Meyer v. Bass*, 281 F.2d 728 (9th Cir.1960); and *United States v. California*, 281 F.2d 726 (9th Cir.1960), holding such restrictions to be enforceable under the Bankruptcy Act.

In most of the cases cited above, the Ninth Circuit's rationale was that the restrictions on a liquor license limit the value of the license and that only the limited value of the license becomes property of the estate. The Court in *In re Anchorage International Inn, Inc., supra*, appears to have held that the Alaska statute created a statutory lien. However, this language appears to be dicta, rather than a holding necessary to a determination of the case. The claimant in *Anchorage International Inn* appears to have argued only that the

restriction created an interest in the liquor license that was similar to a statutory lien. Since the Court found that there were no grounds to avoid the State's interest, viewed as a statutory lien under 11 U.S.C. § 545, there was no need for the Court to determine whether the interest was a statutory lien or some other interest enforceable in bankruptcy. *Anchorage International Inn; supra* at 1452, n. 9.

The Debtor cites several lower court decisions in other Circuits which reject the Ninth Circuit's rationale. *In re Hoffman,* 65 B.R. 985 (D.R.I.1986); *In re Kick–Off, Inc.,* 82 B.R. 648 (Bankr.Mass.1987); and *Terwilliger's Catering Plus,* 86 B.R. 937 (Bankr.S.D.Ohio 1988).[3] The Court in *Terwilliger's Catering* finds that any property interest created by the state statute it addressed did not come into being until a sale of the liquor license was proposed. Since no transfer had been proposed prior to the filing of the bankruptcy case, the entire value of the liquor license entered the bankruptcy estate. *Id.,* at 939.[4]

The *Kick–Off* Court opines that, because the state taxing authority has no right to the beneficial use of the liquor license, it has no property interest in the license. The Court reasons that the State's claim must be either secured or unsecured. Since the statute does not expressly provide for a lien on the license to secure the tax debt, the State's claim must be unsecured. Finally, it assumes that, if the State's claims are unsecured, the license may be sold without satisfaction of the claim. *Id.,* at 651.

■ **Statutory Lien.** The Court will address first the argument that any property interest in the Liquor Licenses given to the City by A.R.S. § 4–210 is a statutory lien which is avoidable under 11 U.S.C. § 545. As noted above, there is dicta in *Anchorage International Inn,* to the effect that a similar statute did give rise to a statutory lien. This view was criticized in *In re Kick–Off, Inc.,* 82 B.R. 648 (Bankr.D.Mass. 1987) on the ground that, unlike most liens, the State's rights in the liquor license were not accompanied by any procedure for selling the encumbered property to pay off the debt.

This ground of distinction may not be valid under Arizona law. In *Fishback v. Foster,* 23 Ariz. 206, 202 P. 806 (Ariz.App. 1922), in determining whether a garageman had a common law lien for storage charges, an Arizona Court noted that liens need not provide a mechanism for sale of the collateral. To the contrary, the Court noted, typically, common law liens did not permit the creditor to sell property, merely to detain it until the debt was paid. Conditioning transfer of a liquor license on payment of a debt may be viewed as a detention of the license.

However, like most states, Arizona law also provides that statutory liens must be strictly construed, that to extend their terms constitutes improper judicial legislation. *Fishback v. Foster, supra* at 209, 202 P. 806; *Gartin et al. v. St. Joseph's Hospital and Medical Center,* 156 Ariz. 32, 35, 749 P.2d 941, 944 (Ariz.App.1988); *Corella v. Superior Court,* 144 Ariz. 418, 420, 698 P.2d 213, 215 (Ariz.App.1985).

**3.** The other cases cited by the Debtor—*Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); *In re Addis,* 40 B.R. 908 (Bankr.W.D.Wis.1984); and *In re Aegean Fare, Inc.,* 35 B.R. 923 (Bankr.Mass.1983)—are inapposite. In *Perez v. Campbell,* the Supreme Court invalidated a state statute permitting the suspension of a debtor's driver's license for nonpayment of a judgment debt to an accident victim which had been discharged in bankruptcy. The Court held that the state statute conflicted with the Bankruptcy Act by interfering with the debtor's "fresh start". This holding was codified in 11 U.S.C. § 525. House Report No. 95–595, 95th Cong., 1st Sess. 366–7 (1977); Senate Report No. 95–989, 95th Cong., 2d Sess. 81 (1978)

U.S.Code Cong. & Admin.News 1978, pp. 5787, 5867, 5963, 6321, 6322. In *Aegean Fare* and *Addis,* the Courts struck down state statutes which they found in conflict with the express language of 11 U.S.C. § 525. Neither case involved a proposed sale of a liquor license for a profit. Nothing in 11 U.S.C. § 525 prohibits conditioning the sale of a liquor license on the payment of certain debts.

**4.** The Debtor uses a similar rationale in this case when it argues that, because the sales tax debt was not more than 90 days past due when the bankruptcy petition was filed, the entire value of the Liquor Licenses entered the bankruptcy estate.

While normally this principle is applied only to determine the extent and validity of the statutory lien, it also seems appropriate to apply it in determining whether the interest created is a statutory lien. With this principle in mind, this Court is unable to find that A.R.S. § 4–210(D) creates a statutory lien when the statute itself is devoid of any language to that effect. Having so concluded, the Court need not determine whether such a statutory lien would be avoidable under 11 U.S.C. § 545(2) under the circumstances of this case.

**Other Property Interest.** The next question to be addressed is whether A.R.S. § 4–210(D) gives the City some type of property interest in the Liquor Licenses other than a statutory lien. The Debtor contends that it does not. The Court agrees but for a reason different from that asserted by the Debtor. The Debtor contends that *Mathis v. Liquor Board*, 146 Ariz. 570, 707 P.2d 974 (Ariz.App.1985) establishes that A.R.S. § 4–210(D) does not create a lien-type property interest in the Liquor Licenses because it affirms that the foreclosure by the secured creditor in that case extinguished the taxing authority's tax liens. The City correctly notes that the tax liens were irrelevant to the interest in question: i.e., the Department's right to refuse to transfer the license. Those, the Court held were not extinguished. *Mathis v. Liquor Board, supra,* at 574, 707 P.2d 974.

However, *Mathis* refers to the Department's rights under A.R.S. § 4–210 as a sanction. A sanction is defined as a penalty imposed for a violation or a reward offered for an observance. BLACK'S LAW DICTIONARY, p. 1203 (5th ed.1979). Its purpose is to deter or coerce. Such a right is not generally viewed as a property interest. The description of the right created by A.R.S. § 4–210 as a sanction seems apt. The Department could coerce payment of the sales tax debt by refusing to

transfer or by revoking the Liquor Licenses. However, neither power would ensure payment of the sales tax debt. In fact, revocation of the Liquor Licenses would destroy their value, making payment of the sales tax debt less likely. These sanctions did not become property interests simply because they could be applied notwithstanding a transfer of the beneficial interest in the Liquor Licenses as held in *Mathis*. The sanction would have little efficacy if it could be thwarted by such a transfer.

The Court does not read the Ninth Circuit cases cited above as holding that the state statutes in question gave the states or the private creditors involved a property interest in the liquor licenses. With the possible exception of *Anchorage International Inn,* what those cases held was that the restrictions in the statute limited or defined the value of the asset acquired by the licensee. This is not the same as saying that the entity creating and granting the license to the licensee retained a property interest in it.

This concept is perhaps more easily understood viewed in a different context. The Ninth Circuit did not invent the "limited value" concept nor has this rationale been applied only in the context of bankruptcy cases. The concept has been expressed in other government entitlements cases in which the issue was, most commonly, whether a party being deprived of a particular entitlement—e.g., a license or a job—was entitled to due process under the Fifth Amendment of the United States Constitution and, if so, whether the party had received it. Linda L. Munden, Comment: Retail Liquor Licenses and Due Process: the Creation of Property Through Regulation, 32 Emory L.J. 1199, pp. 1235–1236 (Fall 1983) (hereinafter "Munden, Comment").[5] For example, in *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), the Court found that a government employee was not denied due process

---

**5.** Since the due process clause only protects life, liberty or property, some cases based their determination on the conclusion that the licensee or employee had no property interest in the entitlement. Munden, Comment, *supra* at 1235, n. 247, citing *Board of Regents v. Roth,* 408 U.S.

564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). However, in those cases where a property interest is found or assumed, the Court has found a violation of due process only where the governmental agency failed to follow the procedures followed by statute.

when he was terminated without a pre-termination hearing because he had acquired a job that could be terminated without a prior hearing. "The interest he was asserting, the right to a pre-termination hearing, was not part of the entitlement he had accepted." Munden, Comment, *supra* at 1236, n. 248. Clearly, the Court in *Arnett* was not declaring that the government had a property interest in the employee's job.

■ **Supremacy Clause.** Presumably, the Debtor would still contend that, unless the City's rights under A.R.S. § 4–210 constitute a property interest, that statute violates the Supremacy Clause of the United States Constitution by creating a priority inconsistent with the Bankruptcy Code. This argument has been addressed and rejected by the Ninth Circuit cases cited above, most recently *Farmers Markets, supra.* There is no perceptible basis for distinguishing this case from those Ninth Circuit cases based on any difference in Arizona law.

Moreover, the correctness of the Ninth Circuit decisions may more easily be understood if the rights of a private licensor in bankruptcy are considered. A private licensing agreement has generally been held to be an executory contract within the meaning of 11 U.S.C. § 365. *Lubrizol Enterprises v. Richmond Metal Finishers,* 756 F.2d 1043, 1045 (4th Cir.1985); *In re Select–a–Seat Corp.,* 625 F.2d 290, 292 (9th Cir.1980). In a bankruptcy case, the debtor must choose whether to assume or reject the contract. 11 U.S.C. § 365(a). However, if the debtor assumes the contract, he must cure any defaults under the contract, including those defaults which occurred before the petition was filed. 11 U.S.C. § 365(b). The private licensor's pre-petition claims are not generally considered secured claims. Nevertheless, it is not considered inconsistent with the priority scheme established by 11 U.S.C. § 507(a) to require the debtor to pay those claims if it wishes to enjoy the value of the contract. Rather, it is recognized that the value the debtor wishes to retain under the contract may not legitimately be separated from the debtor's obligations.[6]

■ **Facts of This Case.** The only remaining question is whether the City's claim to the Sequestered Fund is defeated by the fact that the sales tax debt was not over 90 days past due when the bankruptcy petition was filed or that the Department's complaints were filed in violation of the automatic stay of 11 U.S.C. § 362. The Court concludes that it is not. The automatic stay of 11 U.S.C. § 362 does not toll the passage of time. *In the Matter of Tynan,* 773 F.2d 177, (7th Cir.1985); *Grotting et al. v. Hudson Shipbuilders, Inc.,* 85 B.R. 568, (W.D.Wash.1988). Section 365(b) does not limit the defaults that must be cured if an executory contract is to be assumed to those in existence or delinquent on the date the bankruptcy petition was filed. There is no logical or apparent legal basis for imposing such a limitation on a public licensor.

■ The Department's filing of the Complaints in violation of the automatic stay is more problematic. A.R.S. § 4–210(D) gives the Department the right to refuse to transfer the liquor license only if a complaint has been filed which has not been resolved. Under the law of this Circuit, acts done in violation of the automatic stay are voidable rather than void. *In re Brooks,* 79 B.R. 479, 482 (Bankr. 9th Cir. 1987). *Accord, Sikes v. Global Marine, Inc.,* 881 F.2d 176, 178 (5th Cir.1989). However, apparently, these complaints were filed with knowledge of the pending

---

**6.** One may argue that the only reason that the debtor must cure pre-petition defaults in order to assume an executory contract is that 11 U.S.C. § 365 says the debtor must. However, 11 U.S.C. § 365 merely codifies case law existing prior to the enactment of the Bankruptcy Code. Under the Bankruptcy Act, there was no such express requirement. See, Section 70b of the Bankruptcy Act. Nevertheless, the Courts consistently held that an executory contract could not be assumed selectively, that the debtor was obligated to take the burdens of the contract along with its benefits. *Hurley v. Atchison, Topeka & Santa Fe Railway Co.,* 213 U.S. 126, 29 S.Ct. 466, 53 L.Ed. 729 (1909); *Bank of America National Trust & Savings Association v. Smith,* 336 F.2d 528, 529 (9th Cir.1964); *Schokbeton Industries, Inc. v. Schokbeton Products Corp.,* 466 F.2d 171 (5th Cir.1972).

**728**

bankruptcy case. The City has made no attempt to explain why it filed the complaints without first seeking relief from the automatic stay. Under these circumstances, it would be inappropriate not to avoid the complaints. To refrain from doing so would encourage future violations.

■ Since the City's rights must be analyzed as if it had not filed complaints, the City did not have the right to refuse to transfer the Liquor Licenses. Therefore, if the undersigned Bankruptcy Judge were now deciding the motion to sell the Liquor Licenses, with full benefit of the analysis set forth herein, it would approve the sale of the Liquor Licenses without requiring payment of the sales tax debt but would not approve it free and clear of the City's claims. The Department could then seek to revoke the Liquor Licenses if the sales tax debt were not paid by the purchaser.[7]

Presumably, however, if the sale had not been free and clear, the purchaser would have reduced the amount of the purchase price by an amount corresponding to the sales tax debt. Instead, pending determination of the issue, to protect the estate against the risk of losing the sale, Judge Mooreman approved the sale free and clear of the City's rights, those rights being transferred to the Sequestered Funds. The rights so transferred include the City's right to coerce the purchaser into paying the sales tax debt by seeking to revoke the Liquor Licenses. In essence, the City's sanctioning power was converted into a secured claim by the Court's order approving the sale. That claim must now be granted enforcement.

CONCLUSION

■ The City is entitled to the Sequestered Funds in payment of the sales tax debt. A state statute conditioning the transfer of a liquor license on the payment of a claim to a political subdivision of the state is enforceable in bankruptcy. Such a

condition does not give the claimant a statutory lien or other property interest in the liquor license. It merely limits and defines the nature of the liquor license acquired by the licensee. Nevertheless, the condition normally applies only to the extent and in the manner dictated by the statute. A.R.S. § 4–210 permitted the Department to refuse to transfer the Liquor Licenses only if a complaint had been filed with respect to the Liquor Licenses that was unresolved. Here, the Department filed complaints after the bankruptcy case commenced without obtaining relief from the automatic stay; therefore, the complaints were void or voidable. The Court could have permitted the sale without payment of the sales tax debt, leaving the Department to prosecute its complaints against the purchaser. However, by permitting the sale free and clear of the City's claims, transferring those claims to the Sequestered Funds, the Court converted the City's sanctioning power into a secured claim which must now be honored.

---

7. It does not appear that the purchaser could contend that revocation of the Liquor Licenses for nonpayment of the sales tax debt violated 11 U.S.C. § 525. Section 525 prohibits revocation of a license for nonpayment of a debt which is both dischargeable and actually discharged.

The sales tax debt is clearly nondischargeable. 11 U.S.C. §§ 523(a)(1)(A); 507(a)(7)(E). Moreover, the Debtor—a corporation—will receive a discharge only if it continues to operate after a plan of reorganization is confirmed. 11 U.S.C. § 1141(d)(3).